Rankin v. Simonds.

AMBERRY A. RANKIN, Appellant, *v.* G. B. SIMONDS, Appellee.

### APPEAL FROM MENARD.

The interrogatories to and answers of a garnishee are a part of the record, and need not be preserved by a bill of exceptions.

Where no issue is raised upon the answers of a garnishee, they must be taken as true, and the rights of the parties must be determined by them.

The garnishee has a right to set up any claim he has against the defendant,' to meet the fund in his hands, which he could set off or recoup in an action brought by the defendant to recover the fund.

Rankin, summoned as the garnishee of Elliott, answered, that he had funds of Elliott's, but that he had delivered to E. a note against the H. & S. R. R. Co. for collection ; that E. owed the company an amount greater than the amount of the note and still retained the note, his account with the company being still unsettled. *Held*, that as the note had not been paid, Rankin might withdraw it at any time, and he could not be allowed to set it off against the fund in his hands.

Where garnishees are summoned in an attachment suit, the proper practice is to enter judgment against the garnishees and in favor of the defendant in the attachment suit, for the benefit of such attaching creditors as are entitled to the proceeds.

IN the Circuit Court of Menard county, Simonds sued out an attachment against Wm. H. Elliott, and took process of garnishment against A. A. Rankin and L. M. Green.

Judgment by default was rendered against Elliott for the sum of $1,121.13.

Interrogatories were then propounded to the garnishees, Rankin and Green, and answers given by Rankin, as follows :

Are you acquainted with the plaintiff and the defendant in the above suit? If so, when, where, and how long?

I have seen Mr. Simonds once ; have known W. H. Elliott since 1856, in April of that year.

Are you acquainted with J. M. Green, Amberry A. Rankin and M. G. Moise, or any or either of them? If so, when, where, and how long?

I am acquainted with J. M. Green, and have been for many years; have seen Mr. Moise a few times, twice in St. Louis and about as often in this State. He was at my house once.

Did M. G. Moise place in your hands for collection an order, note of hand, draft or obligation, on W. H. Elliott, or

W. H. Elliott place or put in your hands, for collection or otherwise, a note of hand on L. M. Green, or any other person? If so, when, where and for what amount was said note for, and on whom, and all about the facts connected with or bearing on the note, draft or writing?

Mr. Moise never put in my hands any note, draft or account on any man, nor Mr. Elliott either. But sometime in October, 1857, James Deskins came to my house and left a note on J. M. Green, for $1,665.27, the remainder of a two thousand dollar note to be collected for the use, as he said, of W. H. Elliott, of Linn county, Missouri, part payment to him for his farm that Deskins bought of him, and these are the facts in the case: Sometime in December, 1857, Mr. Elliott came to my house, and told me when I collected the money of Green, to send it to Messrs. Durkee & Bullock, of St. Louis, as a part of the money was going to Mr. Moise of St. Louis. And January first, or thereabout, I sent, by Jacob Bunn of Springfield, two hundred and twenty-five dollars to Durkee & Bullock.

Did you collect any money on said note, bill or writing? If so, in what, how much, and when, and of whom? Give the dates, facts and names particularly.

I stated above how much money I collected to this time, of J. M. Green.

Who placed J. M. Green's note in your hands, and what did he say it was for at that time? Did he state that the note left was to pay the $1,200 order now sued on in this suit, and did you not frequently write to M. G. Moise & Co., or one or both of them, acknowledging the trust?

Mr. James Deskins placed J. M. Green's note in my hands, and he said at that time it was to pay W. H. Elliott $1,665.27, remainder, if called for; he did not say anything about the $1,200 in this suit. I did not know at that time of any twelve hundred dollars, or of Mr. Moise either, or of Mr. Moise & Co. I had not collected to this time only as stated above.

Were your collections on or under said note or writing after you thus wrote to M. G. Moise & Co., or one or both of them, or were they before? How much did you collect, of whom and when? State the dates exactly, and the facts.

My collections of Mr. Green have been $1,356.50, besides the $225 as above stated, and the most has been in certificates of purchase, which purchase was about the 12th of October, after the garnishee in Logan county, making $13 more than is coming to me, as will be seen by bill accompanying this.

Did you not, at one or more times, soon after the note had

been placed in your hands, promise or say to M. G. Moise, that so soon as you collected the money you would hand it or pay it over to M. G. Moise & Co., or to Moise?

Some time in the latter part of 1858, Mr. Elliott wrote or told me when I collected the money of Green, to pay myself, which amounted to $690.47, and the Armstrong debt, which was $369.02; the remainder to go to Mr. Moise. Did not know me, and would not take me as security on a note of N. F. Stone for $125, or thereabout, and I had to come to Springfield and see Jacob Bunn to recommend me. So it was the middle or the last of the year 1858, that Elliott told me to pay to Moise, and I then wrote to Moise that Elliott had told me so to do, and I promised Mr. Moise, in the presence of Mr. Green and John Bennett, and the amount was then nearly agreed on; and the very next day, Mr. Elliott came to my house and forbid me paying Moise any money under any circumstances. The day of which I cannot tell, but think it in the fore part of July, 1859, but it was the next day after Mr. Moise left me in Petersburg.

Are there any credits on the said note, and who put them there? How much and at what time precisely were they put on? State fully the facts, the times, dates, etc.

The dates of the credits on the note can be seen on Mr. Green's report, as agreed to by both of us.

Did, or have you indorsed any credits or sums on said note, since you have been garnisheed? If so, in what were said indorsements or considerations made, had or paid? Did you make any arrangements with J. M. Green, by which he agreed to pay, etc.? What were they?

I, or Mr. Green, or H. B. Rankin, put all the credits on said note. The $1,231 was put on after the garnishee; and I made an agreement to take certificates as above stated, and the Green note for $74. And since all the transactions, garnishee, etc., W. H. Elliott has broken up, and I am compelled, in self-preservation, to put in all the claims I hold against Elliott; except my trouble and my expenses, I have as yet charged nothing.

A. A. Rankin, in addition to the statements hereinbefore made, states that all the effects he claims the right to deduct from the proceeds of the J. M. Green note, existed and had occurred before the service of the garnishee proven on him, said Rankin.

1. The cash item of $277.72 was allowed to Elliott the 1st April, 1857.

2. The claims for machinery originated the 1st April,

1853, in the purchase of certain carding machines, bought by me for Elliott, of Armstrong, of Springfield, Illinois, and sent to said Elliott in Missouri. The price of the machinery, and freight and expenses of a hand, which was paid by me to Armstrong, to the sum of $369.02.

3. The cash item of $269.54, originated on the 1st January, 1857, in the following manner: This affiant had sold land to the Hannibal and St. Joseph Railroad Company, and had the company's note for $269.54. A deed was to be executed by affiant and wife, to cover the real estate sold as above, and before the delivery of said deed, the $269.54 was to be paid. This deed was executed duly by said affiant and wife to said company, and the deed and note for $269.54 delivered to Elliott on or about the first January, 1859, who agreed to deliver the deed to the railroad company, and received the money. Neither the note nor the deed has been returned, or in any manner accounted for to me. Elliott owed the company some $600 or $800, and my understanding is, that he still retains the note and deed; his account with the company is still unsettled.

4. This fourth item, being cash item of $412.75, originated thus: Elliott was my agent, to sell my half interest in certain town lots in the town of St. Catherine, Mo. We had a settlement on the first of April, 1857; after that date he continued to sell until the 1st of July, 1859, when I revoked his authority to sell, being advised at that time of Elliott's probable insolvency. By Elliott's admission to me, he sold property of mine, being my half interest in the lots, amounting to $412.75, and received the pay either in cash or labor, between the first of April, 1857, and the 1st of July, 1859.

Of the above four items, the undersigned has never received pay in whole or in part, nor has he any security for the same, except as he may be allowed to retain the same from the J. M. Green note. At about the 4th of July, 1859, Elliott was at my house in Menard county, Illinois. He then expressly permitted and agreed with me, that for whatever claims I had against him, I should retain any balance I had against him on all accounts, without qualification, out of the proceeds of J. M. Green note; at that date what was due me for the sale of my interest in St. Catherine lots, was expressly mentioned, but the amount was not ascertained until after Elliott's return from Missouri. His account was forwarded to me, showing said balance of $412.75, all of which originated previous to 1st July, 1859.

The court upon these answers, (no issue being formed

thereon,) rendered judgment against the garnishee Rankin, as follows:

G. B. SIMONDS,
vs.                                                } Attachment.
A. A. RANKIN, Garnishee of Wm. H. Elliott.

And now at this day, this case, which was heretofore referred to the court for adjudication, coming on to be heard, and the court having taken sufficient time to consider the argument of the counsel, doth find against the said A. A. Rankin, the sum of eight hundred and fifty-one dollars and thirteen cents. It is therefore ordered by the court, that the said plaintiff recover of and from the said A. A. Rankin, the aforesaid sum assessed by the court, and also the costs herein expended, and that execution issue therefor.

Rankin appealed, and now assigns for error: That the court erred in not discharging said Rankin as garnishee upon his answer; that the court errred in its finding against the said garnishee, and in rendering judgment for costs against him.

HAY & CULLOM, for Plaintiff in Error.

W. H. HERNDON, for Defendant in Error.

CATON, C. J. Although the question has never before been made, so as to call for a direct decision, it has always been the practice of our courts to treat the interrogatories to and answers of a garnishee as a part of the record without requiring them to be embodied in a bill of exceptions, and such we have no doubt is the correct practice. They constitute a part of the pleading in the cause, and as such are a part of the record as much as any other pleading. The statute expressly provides that an issue may be taken on the answer of the garnishee, and it follows that if the answer is not thus traversed by the formation of such issue, it must be taken as true, and by it must the rights of the parties be judged. This has been settled by repeated decisions of this court. The garnishee has a right to set up any claim which he has against the defendant, to meet the fund which he may have in his hands, which he could set off or *recoup* in an action brought by the defendant to recover such fund. By this rule we think the garnishee should have been allowed the several claims which he asserted in his answer, except the item for two hundred and sixty-nine dollars and fifty-four cents, which was for a note of that amount which he held against the Hannibal and

Rankin *v.* Simonds.

St. Joseph Railroad Company, and which he had placed in the hands of the defendant for collection. This note, he admits, has not been collected, but he claims to be allowed for the amount, for the reason that the defendant owes that company more than the amount of the note. He still retains the note, and his account with the company is still unsettled. Now the title to this note is still in the garnishee, and he has a right to withdraw it at any time from the hands of the defendant, who has not collected it and who is consequently not liable to the garnishee for its amount. Had the defendant settled with the railroad company, and delivered the note up as so much cash upon the amount which he owes to the company, then indeed the garnishee might well treat it as so much money in his hands. As it is, we think this claim should not be allowed.

We observe, too, that the judgment was not entered in proper form, and hence we will repeat what we said in *McLagan* v. *Brown*, 11 Ill. 519, as to the proper mode of entering a judgment against a garnishee. There the court said: "The proper practice would therefore seem to be, to enter the judgment against the garnishee in favor of the defendant in the attachment, for the benefit of such attaching creditors as are entitled to share in its proceeds." Here the judgment was entered against the garnishee, not in favor of Elliott the defendant in the attachment, to whom the fund in his hand belonged, but in favor of Simonds, the plaintiff in the attachment, and to whom the fund did not belong. In this case the fund in the garnishee's hand was greater than the amount of the judgment which Simonds recovered against Elliott, and his judgment against the garnishee would have been greater than the amount recovered against Elliott but for the deductions which the garnishee has a right to have allowed for claims against Elliott. And as it is, he has two judgments in part at least for the same demand against two individuals.

Whatever judgment is finally rendered against the garnishee, should be entered up in favor of Elliott to the use of Simonds, or so much of it as is sufficient to satisfy his judgment against Elliott, and the balance, if any, to the use of Elliott himself. The judgment must be reversed, and the cause remanded.

*Judgment reversed.*