The People of the State of Illinois by Maclay Hoyne, State's Attorney, v. Peter A. Mortenson and Charles E. Chadsey.
In the Matter of the People of the State of Illinois, Informant, Defendant in Error, v. Albert H. Severinghaus et al., Plaintiffs in Error.

### Gen. No. 26,278.

1. CRIMINAL LAW—*when duty of State's Attorney to file nolle prosequi or confession of error.* It not only is within the power but it is the duty of a State's Attorney to file a *nolle prosequi* or confession of error in any criminal case where, in his judgment, he may conclude that prosecution of the case should not continue.

2. CONTEMPT—*when court should not approve nolle prosequi or confession of error filed by State's Attorney.* When a *nolle prosequi* or confession of error is filed by the State's Attorney, discretion is imposed upon the court which should not approve of the motion to dismiss unless it also is of the opinion that the due administration of justice requires that the prosecution be ended, especially when a criminal contempt of court is charged.

3. CRIMINAL LAW—*necessity of separate transcript of record for each of several defendants taking writ of error.* When a criminal prosecution against several is taken by them to the Appellate Court by writ of error, it is not necessary that there be a separate transcript of the record for each defendant.

4. CONTEMPT—*what are required to be embodied in bill of exceptions.* In a prosecution for criminal contempt, the information, interrogatories and answers are considered as pleadings which are properly parts of the record and are not required to be embodied in a bill of exceptions.

5. APPEAL AND ERROR—*review of judgments in law cases without formal exception.* Under section 81 of the Practice Act (Cahill's Ill.

St. ch. 110, ¶ 81), judgments in law cases may be reviewed although no formal exception appears.

6. Contempt—*what constitutes contempt on part of board of education.* Where, in a controversy as to the right to the office of superintendent of schools, the circuit court determined in quo warranto proceedings that one of the claimants was the duly qualified appointee to such office and the other claimant was ousted and excluded from the functions of the office, the subsequent action of the board of education in adopting certain rules which, in effect, transferred practically all of the statutory duties of the superintendent to the associate superintendent, which latter office was held by the unsuccessful contestant, constituted a contempt of court.

7. Quo warranto—*what judgment may be entered.* Under the first section of the quo warranto statute (Cahill's Ill. St. ch. 112, ¶ 1), the court has jurisdiction not only to enter a judgment of ouster but also to enter a judgment awarding the office to the person found rightfully entitled thereto.

8. Quo warranto—*when statute authorizing judgment for costs not applicable.* In quo warranto proceedings begun by the State in which both claimants to an office are made defendants, section 6 of the quo warranto statute (Cahill's Ill. St. ch. 112, ¶ 6), authorizing a judgment for costs "in favor of the relator" has no application.

9. Quo warranto—*right to enter judgment of reinstatement to office.* A proceeding in quo warranto commenced on behalf of the People by the State's Attorney, in which both claimants of an office are made defendants, is proper and in such proceeding a judgment of reinstatement may be entered.

10. Quo warranto—*judgment of reinstatement to office as self-executing and not stayed by appeal.* A judgment of reinstatement in a quo warranto proceeding to test the right to a public office is self-executing and is not stayed by appeal.

11. Judgment—*when judgment in quo warranto cannot be attacked in collateral proceeding for contempt.* Where a court has jurisdiction of the respective defendants in quo warranto proceedings to determine the right to a public office, its judgment of ouster as to one defendant and of reinstatement as to the other cannot, even though it be erroneous, be attacked in a collateral proceeding for contempt.

12. Contempt—*what constitutes constructive contempt of criminal nature on part of board of education.* The adoption by a board of education of rules having the effect of transferring the duties of the superintendent of schools to the associate superintendent, thereby practically annulling an order of the court of ouster of the latter and reinstatement of the former as superintendent, constitutes a

constructive contempt of a criminal nature which tends to impede or prevent the due administration of justice.

13. CONTEMPT—*degree of proof required.* In a prosecution for a constructive contempt of a criminal nature, respondents must be proven guilty beyond a reasonable doubt.

14. CONTEMPT—*from what guilt or innocence to be determined.* In determining the guilt or innocence of the respondents in a prosecution for a constructive contempt of a criminal nature, the court is confined to the answer of each respondent.

Error to the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed January 23, 1922. Rehearing denied February 6, 1922.

WILLIAM A. BITHER, for plaintiffs in error; FRANK D. AYERS, PATRICK H. O'DONNELL, RALPH W. CONDEE and JESSE HOLDOM, of counsel.

EDWARD J. BRUNDAGE and ROBERT E. CROWE, for defendant in error; ANGUS ROY SHANNON and GEORGE E. GORMAN, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

By this writ of error the reversal is sought of a judgment order of the circuit court finding certain defendants guilty of contempt of court and imposing punishment.

These defendants are William A. Bither, attorney for, and certain members of, the Board of Education of the City of Chicago. Upon information filed by Maclay Hoyne, State's Attorney of Cook county, on behalf of the People, defendants were charged with a conspiracy wrongfully to frustrate and interfere with the operation of a judgment of the circuit court entered November 8, 1919, and to bring the authority and dignity of the court into disrepute and ridicule, and to thwart and hinder the due administration of justice by the court. They were ruled to show cause

why they should not be adjudged in contempt. Answers were filed. Subsequently the informant submitted a number of interrogatories, to which answers were made and filed. Upon hearing it was adjudged that certain respondents were not guilty, but that others were, and sentences of punishment were imposed upon such as follows: "William A. Bither, 5 days in the county jail and $500 fine. Albert H. Severinghaus, 3 days in the county jail and $300 fine. Hart Hanson, 3 days in the county jail and $300 fine. Mrs. F. E. Thornton, $750 fine. Sadie Bay Adair, $750 fine. George B. Arnold, 2 days in the county jail and $250 fine. Dr. B. Klarkowski, 1 day in the county jail and $300 fine. Mrs. Lulu M. Snodgrass, $500 fine. James B. Rezny, 1 day in the county jail and $300 fine. Francis E. Croarkin, 1 day in the county jail and $300 fine."

Some preliminary motions have been made in this court which we shall refer to with brevity, as in view of the conclusion we have reached their decision is not of determining importance. Upon filing the record, abstracts and briefs for the plaintiffs in error in this court, the present State's Attorney, Robert E. Crowe, on behalf of defendant in error, filed a confession of error praying that the judgments of the circuit court and each of them be reversed. Subsequently Edward J. Brundage, the Attorney General of the State of Illinois, filed motions asking that he be substituted as attorney for the defendant in error and that the confession of error filed by the State's Attorney of Cook county be withdrawn. Suggestions and counter suggestions on these motions were filed and the respective duties and authority of the Attorney General of the State, and the State's Attorney of Cook county, have been presented and urged. The duties of the Attorney General imposed by the statute appear in chapter 14, sec. 4 (Cahill's Ill. St. ch. 14, ¶ 4), and the duties of State's Attorneys are defined in section 5 (Ca-

hill's Ill. St. ch. 14, ¶ 5). We find nothing in these sections or in any other statutory or constitutional provision specifically authorizing a court to substitute in any case one official for the other.

It is clearly not only within his power but the duty of the State's Attorney to file a *nolle prosequi* or confession of error in any criminal case where in his judgment he may conclude that further prosecution of the case should not continue. *People v. Newcomer,* 284 Ill. 315.

However, we construe this last case to hold that where such a motion is made discretion is imposed upon the court, which should not approve of such motion unless it also is of the opinion that the due administration of justice requires that the prosecution be ended. This is especially true where, as here, a criminal contempt of court is charged. Otherwise courts would be powerless to protect their authority and dignity. In order that such discretion may be properly exercised, we have examined the record and have permitted the filing of a brief by the Attorney General on behalf of the defendant in error. Our action upon the confession of error and motion to reverse the judgments filed by the State's Attorney must depend upon our own conclusion as to whether or not the judgments are improper.

Motion was made on behalf of defendant in error by Maclay Hoyne, then State's Attorney, to dismiss the writ of error, which motion was denied. Subsequently this motion was renewed by the Attorney General, who says: (1) The order of the trial court presented for review consists of ten separate judgments against ten separate defendants and requires a separate transcript of the record for each person adjudged guilty. The cases cited in support of this are appeal cases involving the question of joint or several appeals. We are referred to no decision in a writ of error case like this requiring separate records to be

filed for each defendant; and as a writ of error brings up the entire record there is no reason for the application of the rule which obtains in appeal cases.   (2) There is no bill of exceptions in the record, and it is urged that as the issues in contempt proceedings are ones of fact and the evidence appears in the answers of defendants to the information and to the interrogatories, such documents cannot be preserved for review in the common-law record, but must be certified in a bill of exceptions.   As a general rule it has been the practice to consider the information, interrogatories and answers as pleadings properly parts of the record and not required to be embodied in a bill of exceptions.   *Rankin v. Simonds,* 27 Ill. 352; *People v. Gilbert,* 281 Ill. 619.   We see no convincing reason to apply a different rule.   (3)   As there is no exception to the judgment of the trial court shown by the record, there is nothing for this court for review.   Section 81 of the Practice Act (Cahill's Ill. St. ch. 110, ¶ 81) has been construed to mean that judgments in law cases may be reviewed although no formal exception appears.   *Miller v. Anderson,* 269 Ill. 608; *Britton v. Davis,* 273 Ill. 31; *Dunne v. County of Rock Island,* 273 Ill. 53; *City of Lewistown v. Harrison,* 282 Ill. 461.

It is necessary to refer briefly to certain previous matters which tend to explain the attitude of the respondents.   Controversy arose as to the validity of the appointment of respondents as members of the "new" board of education, and on June 20, 1918, in *People v. Davis,* 284 Ill. 439, it was decided that that appointment was invalid.   However, August 28, 1918, the said "new" board undertook to appoint Peter A. Mortenson as superintendent of schools.   October 21, 1918, in *People v. Coffin,* 285 Ill. 344, it was decided that said respondents had no power to appoint a superintendent of schools or remove executive officers, but that the members of the "old" board whom they had sought to supplant alone had such right.   October 26,

1918, a judgment of ouster was entered in the circuit court against the members of the "new" board. November 13, 1918, Mr. Mortenson renounced all claim and title to the office of superintendent of schools and thereafter, March 5, 1919, was employed by the "old" board as associate superintendent of schools. March 12, 1919, Charles E. Chadsey was appointed by this board as superintendent of schools for a term of 4 years commencing March 17, 1919. May 28, 1919, respondents again undertook to act as members of the board, and against the protest of Chadsey elected Mortenson as superintendent of schools for a term commencing May 28, 1919. Also at this same meeting this "new" board proceeded to elect respondent William A. Bither as its attorney. Thereafter quo warranto proceedings were again commenced which resulted in the members of the "new" board again being ousted by judgment of the circuit court October 21, 1919; but pending that suit they were reappointed by the mayor as members of the board, and October 20, 1919, they again undertook to elect Mortenson to the office of superintendent of schools.

From this background of conflict projects the instant controversy. June 26, 1919, information in the nature of a quo warranto was filed in the circuit court, making Peter A. Mortenson and Charles E. Chadsey defendants. It is out of this case that the present contempt case has arisen. That information set forth the conflicting claims of Mortenson and Chadsey to the office of superintendent of schools and prayed them to answer by what warrant they and each of them claimed to hold and execute this office, and that they or such of them as do not justify their claims to the office be ousted, and that the respective rights of said claimants to the office may be determined and adjudged as by statute in such case made and provided. Appearances of the contending claimants were filed and after hearing by the circuit court it was adjudged

that defendant Charles E. Chadsey was legally appointed superintendent of schools on March 12, 1919, for a term of 4 years, and that he had accepted said office and had duly qualified as superintendent and was the legal incumbent of said office for the term expiring March 16, 1923. It was further adjudged that the alleged appointment of defendant, Peter A. Mortenson, to this office was void, and he was thereby ousted and excluded from exercising the functions, privileges and prerogatives of the statutory office of superintendent of schools, and he was ordered to deliver up instanter to Chadsey, the lawful incumbent, all books, files, papers and documents relating to the office and to vacate and surrender to Chadsey the offices and rooms occupied and assigned to the superintendent of schools.

This judgment was entered on Saturday morning, November 8, 1919. An appeal was prayed to the Appellate Court and bond filed. Mr. Bither notified the respondent board members that the judgment was a self-executing one and that Mr. Chadsey was then superintendent of schools and entitled to the possession of office. At the same time, pursuant to a telephone message from him, police officers of the City of Chicago were stationed in the office of the superintendent and the doors were kept locked during the remainder of that day and on Sunday. Mr. Bither also on that day served notice that on Monday morning he would ask this court for a restraining order. On Monday morning Mr. Chadsey appeared at the office of the superintendent with his attorney and Mr. Loeb, a board member, and found the doors of the superintendent's office still locked. Mr. Chadsey did not gain admittance. By agreement matters were allowed to remain *in statu quo* until the following Wednesday morning. At this time, November 12, the motion for a restraining order was denied, whereupon, under instruction from Mr. Bither, the police officers, who had

occupied the offices of the superintendent of schools, removed therefrom and Mr. Chadsey was permitted to enter.

A number of things then occurred of more or less importance, which it is unnecessary to detail. It is sufficient to say that they indicate at least some reluctance or slowness on the part of Mr. Bither and Mr. Mortenson and the members of the "new" board to give Mr. Chadsey complete possession of the room and equipment usually assigned to and used by the superintendent of schools. Subsequently Mr. Chadsey attended a meeting of the board. Shortly afterward Mr. Bither proceeded to draft certain rules with refer ence to the administration of the schools, and after consultation with respondent Mr. Hanson, chairman of the school administration committee, they were presented to some of the members of this committee, which voted to recommend their adoption by the board. Mr. Bither was active in soliciting and recommending to the board the adoption of these rules. Mr. Chadsey, the superintendent, knew nothing of them and no one gave him any knowledge or information about them. A meeting of the board was held November 25, 1919, at which Mr. Chadsey was present and attempted to take part. At this meeting these rules prepared by Mr. Bither, which were "Rules 12 to 16," were presented for adoption. One of the members, Mr. Loeb, voted against them and advised the other members not to adopt them, as it would constitute a contempt of the judgment of the circuit court. They were adopted, however, by the votes of the respondent board members.

The statutory duties of superintendent of schools are found in sections 129, 130 and 138 of chapter 122 of the Act relating to boards of education, Hurd's Rev. St. 1919 (Cahill's Ill. St. ch. 122, ¶¶ 153, 154, 162). It is there provided that the superintendent of schools:

Section 129. "Shall have general charge and control, subject to the approval of the board, of the education department and of the employees therein of the public schools. * * *

"The board shall, subject to the limitations contained in this act, prescribe the duties, compensation and terms of office of all officers. * * *

Sec. 130. "The superintendent of schools shall prescribe and control, subject to the approval of the board of education, the courses of study, text books, educational apparatus and equipment, discipline in and conduct of the schools, and shall perform such other duties as the board may by rule prescribe pertaining to the education department. Appointments, promotions and transfers of teachers, principals, assistant and district superintendents, and all other employees in the teaching force, shall be made, sites shall be selected, school houses located thereon and plans for the same approved, and text books and educational apparatus and equipment shall be adopted and purchased, by the board of education, only upon the recommendation of the superintendent of schools, unless it be by a two-thirds vote of all the members of the board. Text books shall not be changed oftener than once in four years, except on the recommendation of the superintendent, approved by two-thirds of all the members of the board."

The superintendent was also given the right to attend all meetings of the board and take part in its discussions. It was also provided that the board should pass rules and regulations "subject to the limitations contained in this Act." There were also provisions for examiners of applicants for teaching, of which the superintendent was one, the examiners to hold meetings as the board should prescribe upon recommendation of the superintendent.

These rules, which were adopted by the board at the meeting of November 25, attempted to transfer all these statutory duties, prerogatives and authority to the associate superintendent of schools, Mr. Morten-

son, and, in defining them, used almost the identical language of the statute. Virtually the statute was copied but the words, "Associate Superintendent of Schools," substituted in lieu of the statutory words, "Superintendent of Schools."

Obviously the adoption of these rules by the board was a violation of the order of the court finding that Mr. Chadsey was the superintendent of schools and entitled to the office. The office included not only the title, salary and room, but all the duties, responsibilities, prerogatives and authority prescribed by the statute for such office, and which were as much a part of the office as were the title and salary, and could no more be taken from him than could these. These rules purported to take away from Mr. Chadsey the substance of the office, leaving him merely the empty shell. Respondents also attempted thereby to give Mr. Mortenson, who had been ousted by judgment from the office of superintendent, all the powers pertaining thereto, in face of the judgment. In other words, what the court ordered to be done was done only in part, and what it said should not be done was done.

On the following day, November 26th, Mr. Chadsey handed in his resignation, which was accepted. The present proceedings followed. Defendants were ordered to show cause why they should not be adjudged guilty of contempt and punished. After hearing upon the interrogatories and answers, certain defendants were found not guilty, the respondents were found guilty, and the judgments in question were entered.

The adoption of these rules was obviously an attempt to defeat or circumvent the judgment order of the circuit court, and was contemptuous. This seems to be conceded, as no contention to the contrary is made in the points of the brief of plaintiffs in error. Nor are any extenuating circumstances or justification suggested by respondents severally or jointly. The contumacy being thus impliedly admitted, re-

spondents seek immunity in certain rules of practice. They first say that the circuit court had jurisdiction to enter a judgment of ouster only, and had no jurisdiction to enter a judgment awarding the office to Mr. Chadsey. This was the rule at common law, but our quo warranto statute has enlarged this. The latter part of the first section, ch. 112, Hurd's Rev. St. 1919 (Cahill's Ill. St. ch. 112, ¶ 1) reads:

"When it appears to the court or judge that the several rights of divers parties to the same office or franchise, privilege, exemption or license may properly be determined on one (1) information, the court or judge may give leave to join all of such persons in the same information, in order to try their respective rights to such office, franchise, privilege, exemption or license."

Section 6 (Cahill's Ill. St. ch. 112, ¶ 6) authorizing a judgment for costs "in favor of the relator" has no application to the present case, where there is no such relator, the information being filed on behalf of the People by the State's Attorney, and Mortenson and Chadsey were joined as defendants to try their respective rights as permitted under section 1, above quoted. That this is a proper proceeding and that judgment of reinstatement may be properly entered, has been held in *People v. Reinberg,* 263 Ill. 536; *People v. Coffin,* 285 Ill. 344; *Blair v. People,* 181 Ill. 460. The fact that Chadsey is not the relator in the quo warranto proceedings distinguishes this case from those cited by the respondents holding that the court is limited to a judgment of ouster.

The Illinois decisions above cited sufficiently answer the contention that the order of reinstatement is mandatory and stayed by appeal. In *People v. Reinberg, supra,* certain relators sought for a writ of mandamus, and it was contended that to grant the writ would prejudicially affect the rights of the parties in the quo warranto proceeding then pending on appeal, in which the title of the relators had been established. But the

court said the judgment of the superior court in the quo warranto proceeding:

"Is self-executing and requires no process to enforce it. An appeal bond or *supersedeas* bond will not operate to suspend such a judgment. (*Barnes & Co. v. Typographical Union*, 232 Ill. 402; 17 Encyc. of Pl. & Pr. 489; 20 Encyc. of Pl. & Pr. 1244.)"

It may be true in some cases that if a court is without jurisdiction to enter a judgment, such judgment is void and its disobedience not contempt; but this has no application here. The quo warranto statute gave the court jurisdiction of the respective defendants and the power to enter judgment of ouster as to one and reinstatement as to the other. The validity of that judgment cannot be attacked in a collateral contempt proceeding. The court was clothed with lawful power to enter the judgment, and even if its action was erroneous it must be regarded as valid and binding in every collateral proceeding. *Figge v. Rowlen*, 185 Ill. 234; *Tolman v. Jones*, 114 Ill. 147; *O'Brien v. People*, 216 Ill. 354; *Franklin Union No. 4 v. People*, 220 Ill. 355.

This is not a civil remedy to enforce a private right of Chadsey. It is a case cognizant at common law, where the contempt is an act in disregard of the power and dignity of the court, having a tendency to interrupt the due administration of justice. In such cases the trial is had upon answers made to interrogatories filed, and no other evidence is heard, which was the practice followed here. This falls within the definition of a constructive contempt of a criminal nature, that is, a contempt committed not in the actual presence of or so near the court as to interrupt its proceedings, but which nevertheless tends to impede or prevent the due administration of justice. *People v. Seymour*, 191 Ill. App. 381, and 272 Ill. 295; *Barnes & Co. v. Typographical Union*, 232 Ill. 402. Analogous cases are *State v. Cahill*, 131 Iowa 155; *State v.*

*City of Pittsburg,* 80 Kan. 710; *In re Taylor,* 62 N. J. L. 131.

Counsel for the People earnestly asks this court to hold that where criminal contempt is perpetrated by means of a conspiracy, the answer of each contemnor is to be taken as the answer of all the conspiring contemnors. The trial court refused to follow this rule, and found that some of the respondents had purged themselves of guilt by their answers, regardless of the answers of other respondents. We do not see what it would avail for us to pass upon this question of practice in the present state of the record. To agree with counsel in this respect would probably amount only to an intimation that the trial court might have been in error in finding some of the respondents not guilty. We have no jurisdiction to pass upon those who have been discharged of contempt. The trial court did not treat this as a conspiracy, but passed upon the respective guilt or innocence of respondents upon their respective answers, and it has been so considered by us.

We agree with counsel for respondents that they must be proven guilty beyond a reasonable doubt, and that in determining guilt or innocence the court is confined to the answers of each respondent. The respective answers admit participation in the adoption and passage of the rules above referred to by the respective respondents who have been found guilty.

Those may be trusted with authority who willingly submit to authority. As public officials, respondents should have been keen to observe the letter and spirit of judgments of court. It is regrettable that they were not.

After carefully considering the record and what has been said in the briefs filed, in the performance of our obligation to exercise discretion we are unable to give our approval to the motion of the State's Attorney

confessing error and asking that the judgment be reversed, and such motion is denied.

Upon the record the trial court was justified in entering the judgments against the respondents, and they are affirmed.

*Affirmed.*

DEVER, P. J., and MATCHETT, J., concur.