People of State of Illinois, Defendant in Error, v. Michael A. Gerrard, Plaintiff in Error.

Gen. No. 47,167.

First District, Third Division.
November 6, 1957.
Released for publication December 18, 1957.

Albert E. Jenner, Jr., Kenneth J. Burns, Jr., Prentice H. Marshall, of Chicago (Thompson, Raymond, Mayer, Jenner & Bloomstein, of counsel) for respondent-plaintiff in error.

Benjamin S. Adamowski, State's Attorney of Cook county (L. Louis Karton, and Robert W. Scherman, Assistant State's Attorneys, of counsel) for defendant in error.

PRESIDING JUSTICE BURKE delivered the opinion of the court.

The trial in December, 1955, of the case of Narro v. Chicago Transit Authority, an action for personal injuries because of alleged negligence in the operation of a bus, resulted in a verdict in favor of the plaintiff for $5,000. Mr. Fred Lane was the trial lawyer for the plaintiff and Mr. Michael A. Gerrard for the defendant. The defendant filed a motion for a new trial containing 22 points. The argument on the motion was concluded before the trial judge on February 20, 1956. In the argument Mr. Gerrard contended that the questioning by and actions of Mr. Lane during cross-examination of defendant's witness Horstman were prejudicial to the defendant in that he (Lane) used the words "police report" in reference to exhibit No. 11 for identification, interrogated the witness about the exhibit and used the word "police" at the time he framed the question. Mr. Gerrard also contended that the exhibit was handled by Mr. Lane so that the jury knew that the document was a police report. Mr. Lane in his argument before the court, in opposition to the allowance of the motion for a new trial, denied that he had used the words "police report" in his examination of the witness or that he had displayed it before the jury so as to give the impression that the document was a police report. During the argument the court stated that his recollection of the incident coincided with the version given by Mr. Lane and was contradictory to the version of Mr. Gerrard. Upon the conclusion of the argument the court requested that the portion of the cross-examination of the witness in dispute be transcribed as taken by the court reporter and presented to the court so that the court could read what the reporter had to say about it and Mr. Gerrard agreed to procure a transcript of the testimony as requested.

On the afternoon of the day the argument was completed Mr. Gerrard instructed his secretary to order the transcript from the Sullivan Court Reporting Agency. His secretary did so. Mrs. Shirley Ann Cook reported the case for the agency. At the request of the agency she transcribed her notes and delivered the transcript, consisting of 11 pages, to the agency. At that time she was not in the employ of the agency. On February 29, 1956, the agency delivered a transcript of 11 pages to Mr. Gerrard's office. When Mr. Gerrard examined the transcript at about 9:15 A.M. on February 29, 1956, he found that it contained what he believed were inaccuracies. His secretary called the agency on the telephone and Mr. Gerrard gave to a man at that office his (Gerrard's) version of the actions and words in the cross-examination of Horstman by Mr. Lane. Mr. Gerrard testified that the man said he would have the transcript picked up and checked. The transcript was picked up on that day. On arrival at his office the following day (March 1, 1956) Mr. Gerrard's secretary laid the transcript on his desk. It had been returned by the agency that morning. As he was on his way to the courthouse he took the transcript with him. He checked page 7, which was the page on which Mr. Lane's question and the objection thereto appeared and noticed that the page had been corrected to conform with his (Gerrard's) recollection. On that morning, March 1, 1956, he gave the transcript to the trial judge.

The judge gave the transcript to Mr. Lane for examination. Shortly thereafter Mr. Lane protested to the judge that the transcript was not accurate in its report of the cross-examination of Horstman on page 7. The judge told Mr. Lane he could proceed in any manner that he thought he should. The court had the motion for a new trial under advisement. On April 6, 1956, the opposing lawyers appeared separately in the court-

303

room of the trial judge in cases not related to the Narro case. The court indicated to the respective lawyers that he had waited "a long time" and that he was not disposed to "wait much longer." The respective lawyers filed briefs in support of their contentions on the motion for a new trial. The court granted the motion for a new trial on April 18, 1956, and an order to that effect was entered the following day. Thereupon Mr. Lane filed a petition to vacate the order granting a new trial. In the petition Mr. Lane stated his belief that Mr. Gerrard wilfully and fraudulently falsified and changed page 7 of the transcript by replacing the page presented to him with another page. Following the hearing on the motion to vacate the petition allowing the new trial, the court entered a rule against Mr. Gerrard charging him with criminal contempt in that as counsel for the defendant, Chicago Transit Authority, he hindered the due administration of justice in Narro v. Chicago Transit Authority in three particulars. Respondent filed a verified answer and denied the substance of the three charges. At the suggestion of an Assistant State's Attorney that the court give "his version of those things which are within his own knowledge," the trial judge stated that he would "outline the history of the case as he knows it and those events that occurred and are within the court's own knowledge" and made such a statement. Witnesses and exhibits were introduced on behalf of the People and the respondent. The court adjudged the defendant guilty of contempt of court and fined him $750. The respondent prosecutes a writ of error to reverse the judgment.

██ The People maintain that the respondent's offense is a direct criminal contempt. In direct criminal contempt cases the order must recite facts showing that a direct contempt of court has occurred, and the recitation of facts which purport to establish the

304

offense must be of events either personally or constructively known to the court or admitted by the contemnor in open court. The contempt having been committed in the presence of the court, evidence is unnecessary and no record is made. All the essential facts must be fully set forth and facts which did not occur in the presence of the court should not be taken into consideration by the court in adjudging guilt. People v. Loughran, 2 Ill.2d 258, 263. The findings in the judgment order contain statements of fact which were not within the trial judge's personal or constructive knowledge and which were controverted by the respondent's testimony. The procedure followed by the People, the respondent and the trial judge was that of indirect criminal contempt. We think that the respondent was charged with indirect criminal contempt.

█ The respondent urges that the People were required to prove his guilt beyond a reasonable doubt. The People assert that in a case of direct criminal contempt it is not necessary to prove the respondent guilty beyond a reasonable doubt. We have held that the respondent was charged and tried for indirect criminal contempt. All of the elements were not known to the court. One of the essential elements of which the trial judge could not have personal or constructive knowledge and which was expressly asserted by respondent in his verified answer and testimony concerns the circumstances supporting respondent's understanding that the transcript accurately reflected the court reporter's notes. In our opinion it was incumbent upon the People to prove the respondent guilty beyond a reasonable doubt. People v. Spain, 307 Ill. 283, 292; Hollister v. People, 116 Ill. App. 338, 341. The People cite the cases of People v. Kowalski, 307 Ill. 378 and Flannery v. People, 225 Ill. 62, for the proposition that it is not necessary to prove the accused guilty beyond a reasonable doubt in a contempt case. These were

civil contempt cases. Other authorities cited by the People are cases where the alleged contempt was a direct criminal contempt wherein the elements therein occurred within view and hearing of the court and were personally known to the court so that the taking of testimony was unnecessary and issues of fact were not involved. See People v. Andalman, 346 Ill. 149; People v. Parker, 328 Ill. App. 46. The doctrine of purgation by oath is not an issue in this case. See People v. Gholson, 412 Ill. 294.

The transcript which the trial judge requested was first received by the respondent from the agency on February 29, 1956. Upon receiving it from the agency on the morning of the next day in what respondent believed to be substantially accurate form, he presented it to the court. Page 7 of the transcript was revised by the agency. The evidence shows that at the time the transcript was delivered to the judge the respondent had no reason to believe that it reflected other than the reporter's notes. The testimony of the court reporter and the proprietor of the agency does not tend to controvert the evidence introduced by respondent that the transcript was delivered by him to the judge on the morning of March 1, 1956, after the agency had revised and returned the transcript to him, and that thereafter it was in the possession of the judge or Mr. Lane. The motion for a new trial was considered by the trial judge in all its ramifications. During the oral argument it was stated without contradiction that on July 16, 1956, the trial judge denied the plaintiff's petition to vacate the order granting a new trial.

█ Because the People failed to prove the defendant guilty of criminal contempt the judgment of the Circuit Court of Cook county is reversed.

Judgment reversed.

306

FRIEND, J., concurs.

BRYANT, J., dissents.

This is not the ordinary case of contempt, consisting of submitting by the respondent, knowingly and wilfully, of a false transcript to be certified by the court. In such case the scienter depends upon the knowledge of the presenting attorney that the transcript was false when he presented it.

In the motion for a new trial there developed a situation where the recollection of a particular question, or two, and the conduct of the plaintiff's attorney at that time was in dispute. The recollection of the court and of the plaintiff's attorney were in accord and the recollection of defendant's attorney, the respondent herein, was in disagreement. The obligation was placed on the respondent by the court to obtain a transcript of what the court reporter's notes said. This obviously was not a request for a transcript to be certified. It obviously was a request for the transcript of the court reporter's notes in their original state. It certainly was not a request for the respondent to obtain a transcript which corresponded with his recollection. The respondent ordered the transcript. The transcript came and the critical page (Number 7) corroborated the court and corroborated the plaintiff's attorney as to what had been done and said. The respondent did not deliver that transcript to the court. Instead, the respondent called the court reporting agency, said that the transcript was inaccurate and poor work, and told the court reporting agency what his recollection of the transaction was. The court reporting agency picked up the transcript. They returned it the very next morning. Page 7 had been changed. It now read in a way that corresponded with the respondent's recollection. He read the change. He submitted it to the court without any explanation. It is clear to me

307

that the respondent did not comply with the court's directions; that he knew he had not complied with the directions in a way to make effective the court's intended use of the transcript, and that by failure to disclose that fact to the court, he intended to deceive the court.

As that deception would relate to an important point in a motion for a new trial, that deception tended to impede the administration of justice, and on those simple facts alone the respondent is guilty of a contempt of court.

All direct contempts are not committed in the actual presence of the court. Some direct contempts are committed in the environs of the court—the clerk's office or the grand jury room—and some direct contempts are committed partly in the presence of the court and the remainder of the acts constituting the contempt are admitted by the contemnor in open court. Illinois Law and Practice, Vol. 12, pages 4–6, Sec. 3. It is my opinion that the conduct of the contemnor in this proceeding, conformed to the latter case. People v. Berof, 367 Ill. 454, 455–456.

At the time the judge first indicated that he was going to hold the contemnor in contempt of court, all those things had either been done in the presence of the court or had been admitted by the contemnor in open court upon the hearing of the motion to set aside the order granting the new trial. It was therefore direct contempt and the court could have at that time punished summarily. That the court entered a rule to show cause and directed the taking of testimony on behalf of the state and on behalf of the respondent, does not change the nature of the contempt. It is customary in cases where a direct contempt is not committed entirely within the presence of the court, to enter a rule to take testimony in regard to that part of the contempt not committed in the presence of the

court itself. In re Estate of Kelly, 365 Ill. 174, 178–9; People v. Howarth, 415 Ill. 499, 508–509.

If, however, I should agree with the majority opinion that this was a more normal type of contempt involving the presentation of a false transcript in the ordinary sense of the word, which involves a question of certification, and imposing upon the court in that regard, and that it was an indirect contempt, which placed upon the state the obligation of proving the contemnor guilty beyond a reasonable doubt, I would still think him so. The difference in the concept merely changes the type of scienter from one where he knew he was not doing what the court requested him to do, and changed his instruction, so to speak, without advising the court, and thereby intended to deceive the court, to another type of scienter which would require the state to prove that the respondent knew that the transcript was false when he delivered it to the court.

Such a question of scienter is very difficult to prove because it involves the condition of a man's mind. In this case all the testimony of the respondent was, of course, self-serving, and his credibility is to be judged by his interest. It depends entirely upon the exact words allegedly used by the representative of the agency when the respondent complained that the transcript was not accurate; and when the respondent told the representative of the agency what he thought the transcript should contain, respondent says that the agent said, "Send it back and we will check it with our notes." The state did not call as a witness the representative of the agency, nor did the respondent. The slightest deviation in the exactitude of those words would change the whole problem of scienter. It is a well established principle of law, where only one witness testifies to a material event, that you are not required to believe that witness if it seems highly im-

309

probable and there are other reasons which affect credibility. Tepper v. Campo, 398 Ill. 496, 505.

There are certain collateral matters which were developed on the rule to show cause which shed light upon the credibility of this respondent's self-exculpatory statement: (1) The court reporter's notes were, and remained, in complete corroboration of the first transcript submitted; (2) The court reporter was no longer employed by the agency at the time the transcript was first delivered; (3) The court reporter's notes were not in the possession of the agency; (4) She had taken the notes, written up the transcript at home on her own stationery and returned the transcript to the agency; (5) The agency could not have checked the notes. With that situation is to be coupled the fact that the respondent told the agency what the transcript should contain, in accordance with his recollection. Is it reasonable to believe that under the circumstances the agency said to the respondent, "Send it over and I'll check it."

I think the preponderance of the evidence indicates that the respondent approached Shirley Ann Cook and checked her notes with her and asked her to put in the words "police report," and she refused. His interest in denying it is more evident than her interest in affirming it. The evidence is uncontroverted that the respondent on more than one occasion had conversations with the head of the reporting agency in regard to this matter. Even in the construction of this contempt as set out in the majority opinion, and with the provision that it is an indirect contempt and must be proved beyond a reasonable doubt, I am convinced that the respondent is guilty.

It has been urged on oral argument that the respondent's fine reputation at the bar and his long and honored practice should in some way palliate his offense. It might appear that such a position at the bar

would place upon him a greater obligation to be scrupulously correct in his conduct. I cannot give my approval to his conduct in this case.

In this connection it should also be pointed out that this case involves integrity in the administration of justice. The court appeared to be exceedingly fair. He gave the respondent rights in regard to the hearing which he might not necessarily have given him. He was fair and impartial in his rulings as far as the record discloses. In this case he was trying to maintain in his court room the highest standards of the profession and scrupulous integrity in the administration of justice. I think it is highly important that his effort in that regard be approved. I therefore must dissent.