21 Ill.2d 407 (1961)
173 N.E.2d 417
THE PEOPLE ex rel. THE CHICAGO BAR ASSOCIATION et al., Relators,
v.
PHILIP J. BARASCH, Respondent.
No. 34809.
Supreme Court of Illinois.
Opinion filed March 29, 1961.
*408 CHARLES LEVITON, of Chicago, (JOHN LIGTENBERG, JOHN C. MENK, JACOB H. MARTIN, and JEROME H. LEVITON, all of Chicago, of counsel,) for relators.
PAPANEK & SCHILLER, of Chicago, for respondent.
Respondent found guilty of contempt.
Mr. JUSTICE HOUSE delivered the opinion of the court:
An original action was filed in this court on March 18, 1958, by the People on the relation of The Chicago Bar Association and its Committee on Unauthorized Practice of Law. The information charged that respondent, Philip J. Barasch, was in contempt of court by holding himself out to the public as qualified to perform legal services and engaging in the unauthorized practice of law. Respondent answered, and we referred the matter to Honorable Roger J. Kiley, Justice of the Appellate Court for the First District, as Commissioner, to take proofs and report his conclusions of law and fact. The cause is here upon the report and exceptions thereto filed by both parties.
*409 Respondent was admitted to practice by this court on October 11, 1934. On his own motion his name was stricken from the roll of attorneys on December 20, 1938, and he has not been readmitted.
The information charges generally that respondent is guilty of the unauthorized practice of law under the names "International Adjustment Company" and "Philip J. Barasch and Associates." Specific acts alleged to constitute the practice of law were also set up in separate specifications. Two were based upon letters written by respondent on February 5, 1953, and January 5, 1956, respectively, and two on occurrences in 1957.
At the outset we are confronted with respondent's contention that this is a criminal proceeding or in the nature of a criminal proceeding, and that the rules of criminal procedure must be followed, including proof of the charges beyond a reasonable doubt, application of limitations similar to the Statute of Limitations, and formality of information.
Contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized as sui generis, and may partake of the characteristics of both. (People v. Doss, 382 Ill. 307; People ex rel. Martin v. Panchire, 311 Ill. 622; People v. Parker, 397 Ill. 305.) Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while it has been said that civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. (People v. Redlich, 402 Ill. 270; People v. McDonald, 314 Ill. 548.) These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and even imperceptible. (People v. Gholson, 412 Ill. 294.) A further guide may be found in the purpose of punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been *410 done, whereas imprisonment for civil contempt is usually coercive and, as was said in the case of In re Nevitt, (8th cir.) 117 Fed. 448, "he [the contemnor] carries the key of his prison in his own pocket." While we have repeatedly held that contempt is not a crime, (People ex rel. Martin v. Panchire, 311 Ill. 622; People ex rel. Rusch v. Jilovsky, 334 Ill. 536; Anderson v. Macek, 350 Ill. 135; People v. Goss, 10 Ill.2d 533,) we are of the opinion that this proceeding is in the nature of criminal contempt. Nevertheless, in many areas a respondent is not entitled to the protection of all the safeguards surrounding one accused of crime. An exploration of some of those areas points up the difference.
The basic right of trial by jury for one accused of crime is not extended to one accused of criminal contempt, (People ex rel. Martin v. Panchire, 311 Ill. 622,) and its denial in such case does not violate any constitutional right thereto. (Green v. United States, 356 U.S. 165, 2 L.ed.2d 672, 78 S.Ct. 632.) Furthermore, the strict rules regarding the setting out of charges in an information or indictment have no application. (People v. Parker, 396 Ill. 583; People ex rel. Rusch v. Kotwas, 363 Ill. 336; People ex rel. Rusch v. Jilovsky, 334 Ill. 536.) A further illustration of the vast difference between prosecution of crimes and hearings in contempt proceedings is found in cases of direct contempt, or those committed in the presence of the court. Direct contempt may be dealt with summarily without the formality of pleadings, notice or hearing. This is true whether the contempt be civil or criminal in nature. People v. Gholson, 412 Ill. 294.
We turn to the question of whether the charges must be proved beyond a reasonable doubt. This may be somewhat academic in view of the proof, but the issue has been drawn squarely for the first time in this court and requires our attention.
People v. Spain, 307 Ill. 283, involved a contempt charge for failure to answer questions before a grand jury on the *411 ground that respondent's answers might tend to incriminate him. The case turned on the constitutional inhibition against self-incrimination, but the opinion went on to say that the contemnor was entitled to the presumption of innocence until his guilt was established beyond a reasonable doubt. In People ex rel. Rusch v. Fusco, 397 Ill. 468, the statement in the Spain case that guilt in criminal contempt cases must be proved beyond a reasonable doubt was cited although civil, not criminal, contempt was the issue. The Appellate Court has followed the Spain case on the degree of proof required. Hollister v. People, 116 Ill. App. 338; People v. Hille, 192 Ill. App. 139; People v. Mortenson, 224 Ill. App. 221; People v. Gerrard, 15 Ill. App.2d 301.
Relators direct attention to the fact that in the eight previous original contempt proceedings for the unauthorized practice of law there was no intimation that proof beyond a reasonable doubt is required. In the first of such cases (People ex rel. Illinois State Bar Ass'n v. Peoples Stock Yards State Bank, 344 Ill. 462,) the court asserted its inherent right to authorize and prohibit the practice of law, in addition to its power to disbar or otherwise discipline. In neither that case nor those following, (People ex rel. Courtney v. Real Estate Tax-Payers, 354 Ill. 102; People ex rel. Chicago Bar Ass'n v. Motorists Association, 354 Ill. 595; People ex rel Chicago Bar Ass'n v. Chicago Motor Club, 362 Ill. 50; People ex rel. Chicago Bar Ass'n v. Goodman, 366 Ill. 346; People ex rel. Chicago Bar Ass'n, v. Novotny, 386 Ill. 536; People ex rel. Chicago Bar Ass'n v. Tinkoff, 399 Ill. 282; People ex rel. Illinois State Bar Ass'n v. Schafer, 404 Ill. 45,) was the degree of proof put in issue; consequently no inference may be drawn therefrom.
It is also argued that since the proof in disciplinary proceedings need only be clear and convincing, (People ex rel. Chicago Bar Ass'n v. Lotterman, 353 Ill. 399; In re Smith, 365 Ill. 11; In re Moore, 8 Ill.2d 373; In re Fisher, 15 Ill.2d 139,) one who is charged with unlawfully practicing *412 law should not be clothed with greater protection. It would seem an anomaly, but contempt covers many other fields and the rule on degree of proof which we adopt must apply to all. We would not be justified in making one rule applicable to those charged with usurping our professional privileges and a different one for all others.
The great weight of authority is that the guilt of one accused of contempt, criminal in nature, must be proved beyond a reasonable doubt. (See: 49 A.L.R. 975-989 for annotations and assembled cases.) We adopt that view.
On the question of limitation, respondent points out that he does not claim that the Statute of Limitations bars the action but asserts that the court should not act if the Statute of Limitations was deemed applicable to the action or, in the alternative, that where the affront to authority cannot be said to have impeded the administration of justice for over five years it be treated as de minimis. The statute is not a bar, and the circumstances in each case should be carefully examined to determine when lapse of time would make it unjust or unfair to compel a respondent to answer contempt charges. This is the yardstick used in disciplinary cases and seems most equitable in this proceeding. (See: People ex rel. Healy v. Hooper, 218 Ill. 313; In re Anderson, 370 Ill. 515.) In some cases the statutory period of limitation might be considered too long, while others, such as a series of contemptuous conduct over an extended period of time, might justify charges long after the statutory period of limitation.
This case falls within the latter category. The charges of holding himself out as an attorney in the letters of 1953 and 1956 are followed by two additional incidents in 1957. The charges allege a continuing series of contempts. Under such circumstances it is not unfair or unjust to make inquiry of his conduct dating back to 1953.
Respondent operates a diversified service including preparation of income-tax returns, real-estate business, *413 mortgage business, automobile license service, skip tracing, handling traffic fines and collections. Until 1955 he operated under the name of International Adjustment Company, and since then as Philip J. Barasch and Associates. In each case he was sole owner.
The first specific action is based on a letter dated February 5, 1953, addressed to Montrose L. Tavern, wherein respondent stated that he represented a Mrs. Wiczek in a claim for personal injuries sustained to "our client" and that unless he heard from the addressee, a suit would be filed for damages and injuries. The second specification was based on a letter addressed to Robert Weinstein notifying him of a claim for property damage resulting from an automobile collision and requesting that the addressee contact respondent's office "so that it will not be necessary for us to file suit." Respondent admitted taking each case on a 1/3 contingent basis and writing both letters, but asserts that they were collections. These were both tort actions and in taking them and writing the letters respondent was holding himself out as an attorney and was engaging in the practice of law.
The next specification charges respondent with the unauthorized practice of law in that he represented Topolinski and Dalke in the purchase of a $39,500 building. The documentary evidence consisted of a real-estate contract dated August 1, 1957, which provided that all notices and demands should be mailed to the purchaser in care of Philip J. Barasch and an escrow letter dated August 20, 1957, was addressed to a savings and loan association directing disbursement of $1000 upon the written direction of Henry T. Synek and Philip Barasch "attorneys for the sellers and buyers respectively." On August 27, 1957, respondent wrote to the attorney for the sellers requesting that certain work be done, and on September 30, 1957, he and attorney Synek addressed a letter to the loan association directing release of the escrowed funds. Respondent signed the letter as *414 "their attorney," (referring to the purchasers). His explanation was that he was merely doing a favor for a friend and attended the closing to protect the purchasers. He asserts that the words under his signature on the August 20th letter were "acting for" not "atty (or attory) for," and that the words "Their attorney" below his signature on the September 30th letter were placed there after he had signed. The testimony of a handwriting expert called by agreement of the parties was contrary to respondent's testimony and convinced the commissioner, as it does us, that he signed the letters as attorney for the buyers. Respondent's contention that the letter of September 30th should not be considered because it is not pleaded in the information is without merit. It was part of the whole transaction and, as heretofore pointed out, pleadings in contempt proceedings do not have to be stated with the particularity required in a criminal prosecution.
"The practice of law involves not only appearance in court in connection with litigation but also services rendered out of court, and it includes the giving of advice or the rendering of any services requiring the use of legal skill or knowledge, such as preparing a will, contract or other instrument, the legal effect of which, under the facts and conditions involved, must be carefully determined." (People ex rel. Illinois State Bar Ass'n v. Schafer, 404 Ill. 45, 50. See also: People ex rel Chicago Bar Ass'n v. Tinkoff, 399 Ill. 282; People ex rel. Illinois State Bar Ass'n v. Peoples Stock Yards State Bank, 344 Ill. 462.) Respondent's activities in the Topolinski-Dalke matter fall well within the rule above quoted and constitute the practice of law.
The last specification concerned a charge that respondent acted in a divorce case, and testimony was offered on that charge as well as another that respondent agreed to assume the collection on a 1/3 contingent basis of amounts due under a separate maintenance decree. The commissioner found the charge of handling the divorce case was not proved beyond *415 a reasonable doubt and that the separate maintenance proof was offered when no charge had been made. We do not feel disposed to substitute our judgment for the commissioner's in this connection.
Other activities of respondent charged in the general specification are in the twilight zone between services which may be performed by a layman and those which are properly rendered by an attorney. Our failure to comment on them further should not be construed as indicating approval of all such activities.
A final question deserving attention is the effect, if any, of a prior finding of contempt for the unauthorized practice of law. This respondent was found guilty of contempt for unauthorized practice of law in the municipal court of Chicago in 1948, some ten years after his name had been stricken from the roll of attorneys. His sentence of imprisonment for sixty days and the imposition of a fine of $200 was affirmed by the Appellate Court in People ex rel. Chicago Bar Ass'n v. Barasch, 338 Ill. App. 169, and by this court in People ex rel. Chicago Bar Ass'n v. Barasch, 406 Ill. 253. We are of the opinion that the infractions there involved do not give rise to an inference of guilt in this proceeding. They are, however, elements for consideration in aggravation and mitigation.
The learned commissioner found the respondent guilty of contempt of this court and recommended that his penalty "be suited to effectively restrain him from engaging in the unauthorized practice of law in the future." We have heretofore noted the respects in which respondent is guilty. In fixing his punishment we take into consideration the fact that his transgressions have extended over several years and that despite his prior conviction of similar charges he has persisted in holding himself out as an attorney and has continued to engage in the unlawful practice of law.
It is the order and judgment of the court that respondent, Philip J. Barasch, be found guilty of contempt and he *416 is hereby sentenced to the county jail of Cook County for a period of one year; and be assessed a fine of $1000 payable to the clerk of this court.
Respondent found guilty of contempt.