(No. 15880.—Rule discharged.)

### THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* FRANK P. A'BRUNSWICK, Respondent.

*Opinion filed February 17, 1925.*

1. DISBARMENT—*power to disbar should be exercised only upon clear proof.* The power of the court to disbar an attorney should be exercised in moderation and only upon clear proof, and not only must the acts of misconduct charged be proved, but also fraudulent and dishonest motives.

2. SAME—*an attorney may take necessary legal steps to collect fees.* While it is contrary to the ethics of the profession for an attorney to enter into needless controversy or litigation with his clients over fees, yet he has a right, where he performs legal services and charges no more than they are reasonably worth, to insist upon being paid and to take whatever legal steps are necessary.

3. SAME—*belligerent attitude and bad temper are not cause for disbarment.* A headstrong and belligerent attitude and bad temper and disposition on the part of an attorney are to be deplored but are not of themselves ground for disbarment.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

GEORGE F. ORT, for respondent, FRANK P. A'BRUNSWICK, *pro se.*

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an information for disbarment, filed by leave of court by the Chicago Bar Association against the respondent. Upon the filing of respondent's answer the matter was referred to one of the masters in chancery of the circuit court of Cook county as commissioner, to take the proofs and report his findings and conclusions therefrom. The evidence was taken and the report of the commissioner was made and filed herein, which report recommended that respondent be suspended from the practice of law for the

period of one year. There were four specifications in the information, and the findings of the commissioner appear to be based upon the second specification. The respondent filed objections and exceptions to the report. The relator filed neither objections nor exceptions, but asks that the recommendation of the commissioner be not followed by the court but that the rule should be made absolute on the findings of fact.

Exhibits "A" to "N," inclusive, of respondent's brief are laudatory letters written by various parties concerning respondent. Upon motion of the relator these exhibits are stricken from the briefs on the ground of impertinence.

The first specification is with reference to a dispute arising over the amount of respondent's attorney's fees in the matter of a collection made by him for an automobile dealer residing at Fairview, Illinois. The collection was originally sent to respondent by a collection agency which had taken the claim for collection upon a basis of fifteen per cent of the amount collected. After a futile effort to collect without suit the claim was returned to the collection agency and thereafter was sent to respondent by the claimant directly. The respondent brought suit in the municipal court of Chicago, spent considerable time in the preparation and trial of the case, and as a result of the trial secured a judgment for $200, from which an appeal was taken to the Appellate Court for the First District by the debtor. After considerable correspondence with claimant and considerable negotiation with the attorney for the debtor, by instruction of the claimant respondent compromised the claim for $150. Respondent had also put in considerable time upon another claim which he had received from claimant. Immediately after the settlement was made respondent notified claimant that he had received $150, and stated that after the commencement of the suit he had charged up his time spent in connection with it to the amount of $200, and offered to cut down his charges so as to send claimant a check for

the charges advanced. After considerable correspondence between respondent, claimant and the collection agency, respondent, about a month after the collection was made, sent a check to claimant for $25. Claimant refused to accept the check and placed the matter in the hands of a firm of Chicago lawyers, who demanded that respondent immediately remit to them the sum of $150, less fifteen per cent commission, and returned to respondent the check for $25 which he had theretofore sent to claimant. Respondent refused to accede to this demand, and shortly thereafter the Chicago lawyers filed a complaint with the grievance committee of the Chicago Bar Association. After much correspondence, during which claimant offered to settle for $75, on October 18 respondent wrote to claimant asking him to draw upon him for a reasonable sum and that he would pay it if it was within reason. To this letter claimant replied on October 26, stating that he had drawn upon respondent for $100, and that in the event of further trouble the amount of $100 would have nothing to do with the amount of the claim. To this letter respondent replied, stating that since the payment of any sum would not settle the dispute entirely and forever, he could see no way of effectually disposing of the controversy except by letting the court decide who was right, and that the amount involved was not any more the chief question, but rather who was in the right. The motion for leave to file an information to disbar was filed at the next session of this court. The report of the commissioner finds that respondent did not receive the claim for collection upon a fifteen per cent basis and he would therefore be entitled to receive as compensation for his legal services whatever such services were then and there legally worth, and it is not disputed that the services actually rendered by respondent were worth the amount claimed by him.

The third and fourth specifications of the information referred to the same matter. In 1923 twelve notes were

given by persons connected with the American Ice Machine Company, doing business as a corporation in Chicago, to respondent to collect and after deducting his commissions to pay the proceeds to certain persons named as being interested in the notes. Respondent made some collections and procured judgments on several of the notes against the makers. Thereafter the parties who had given him the notes were arrested on a criminal charge with reference to the notes. Thereupon demand for the notes and proceeds was made upon respondent by the parties who had delivered the notes to him. He signified his willingness to comply with the demand but stipulated that before turning the notes over, by reason of the litigation, he should have releases from all parties who were alleged to have any claim to them, and he prepared and gave them releases to secure the signatures of the interested parties. The releases were never executed. Demands were made from time to time by the parties and by an attorney who had been employed to defend them in the criminal case, and finally respondent filed a bill in the circuit court making all the parties who were alleged to have any interest in the notes parties defendant, for the purpose of ascertaining to whom the notes should be delivered or who was the rightful owner of them. Thereafter an involuntary petition in bankruptcy was filed in the United States district court against the American Ice Machine Company and an order was entered in that court restraining the prosecution of the case in the circuit court, and in compliance with an order of the district court respondent turned over to the receiver for the American Ice Machine Company all of the notes which were in his possession. Respondent filed in the district court a claim for fees, which are in nowise shown not to be in accord with the usual, reasonable and customary fees in Chicago for like services. In respect to these specifications the commissioner's conclusion is "that because of the situation and the conditions existing at the time, A'Brunswick was entitled to

be paid the compensation fairly due to him and to be properly relieved of any obligation with reference to the notes in question. He did afterwards file a bill to determine the ownership, and whether he was justified or not in the position taken by him, it does not appear that he willfully and maliciously refused to turn over the notes. In fact, the record shows that he made up different releases which he asked to have signed in the manner in which he had prepared them, in order that he might, in his opinion, be relieved from any responsibility with reference thereto, and he also made statements showing the compensation he believed he was entitled to. If there was a valid corporation entitled to the return of the notes this matter could have been easily and speedily determined."

The second specification of the information upon which the recommendation of suspension is based is upon the following facts: Joseph Stout, an insurance agent, had a suit pending in the circuit court of Cook county before Judge Friend, with Joseph T. Delfosse and the Mutual Life Insurance Company, over an assignment of renewal premiums which Stout had coming to him from the insurance company and which had been assigned to Delfosse as security for a loan. A second assignment was made by Stout to his wife. Stout was represented by an attorney. Mrs. Stout employed respondent for the purpose of having him file an intervening petition for her, so that she might secure from Delfosse and the insurance company the amounts due her after satisfying Delfosse. Respondent filed the petition and thereafter filed an amended and a supplemental petition. May 24, 1922, notice was served upon respondent by counsel for Delfosse, stating that on May 25 he would appear before the court and move that the cause be dismissed without costs, in conformity with an attached stipulation, which stated, among other things, that it was agreed between the parties, by their respective counsel and personally, that the cause, together with the intervening petition, should be dis-

missed, the same having been settled.   On June 6, 1922,
Judge Friend, over the protest of respondent, fixed the
amount due from Mrs. Stout to respondent for legal ser-
vices at the sum of $150 and entered an order therefor,
crediting Mrs. Stout with the payment of $60, leaving a
balance due respondent of $90, which was tendered to him.
He refused to receive the same and prayed an appeal to
the Appellate Court.   The suit was dismissed according to
the stipulation.

With reference to the second specification the conclu-
sion of the commissioner is:   "The evidence shows that
A'Brunswick believed that there was a considerable sum of
money to which Mrs. Stout was entitled and he proceeded
as best he could to obtain it for her; that after the mat-
ter had gone along for some time, the parties, without his
knowledge or consent, got together and made an adjustment
thereof and signed a stipulation to dismiss the suit, as also
the intervening petition filed therein by A'Brunswick in her
behalf; that A'Brunswick objected to the dismissal thereof
until his fees were fixed, and thereupon submitted his claim
for fees to the learned judge presiding, who, after hearing
the respective parties, made an allowance of $150; that
after the same was fixed by the court he should have abided
by it, in order that due respect be given to the court and
due regard for its pronouncement and decrees; that here,
again, because of the temper of A'Brunswick and his head-
strong and belligerent manner, he refused to abide by the
decision of the court, and thereafter, in violation of the
ethics of his profession, served notice upon the insurance
company of a claim for attorney's lien in a sum far in ex-
cess of the amount allowed him by the court, and by rea-
son of so doing his client has been unable to receive any
portion of the money due to her.   I can find no justification
for this action by him, which was wholly unwarranted after
having submitted his claim to the court for adjudication."

These conclusions of the commissioner in several respects are not in accordance with the evidence. The evidence shows that at the time respondent was employed by Mrs. Stout he informed her that his fees for the services rendered her would be charged at the rate of $6 per hour. The evidence also shows that the respondent spent a large amount of time and a great many days in court obtaining leave to file the petitions, arguing demurrers, arguing motions to advance the cause for hearing, and other motions; that he spent a large amount of time outside of court in the preparation of the case and in negotiations with the lawyers for Stout, Delfosse and the insurance company; that he wrote many letters to the various parties interested in the controversy; that as the result of his efforts the insurance company was compelled to file in the case a statement of Stout's account, from which respondent claimed that it was apparent that Delfosse had been largely overpaid; that there was the sum of $1291 due Mrs. Stout from Delfosse and the insurance company; that after obtaining this statement for the purpose of ending the litigation respondent entered into negotiations with the parties to secure a settlement out of court; that on May 18, 1922, he wrote Mrs. Stout asking her for authority in writing to make the settlement, and informing her that at the agreed rate the amount of fees due at that time was $565; that almost immediately after the receipt by Mrs. Stout of this letter the settlement was made without the knowledge or consent of respondent; that upon receiving notice that a settlement had been made May 24, 1924, before the entry of the order of dismissal and before any order had been entered by Judge Friend with reference to his fees, respondent served a written notice upon the insurance company and Delfosse for an attorney's lien for $565. On May 25, 1922, the parties all appeared in court before Judge Friend and respondent objected to the dismissal of the suit until his fees were paid. A discussion ensued, and the judge inquired how respondent arrived at the sum

of $565. Upon explanation by respondent the court stated
that he would take testimony on the question.  Respondent
did not voluntarily submit his claim for fees to the judge
but stated that he did not believe that the court had juris-
diction; that he was not a party to the suit and objected
to any hearing upon the subject.  The judge, however, with-
out any authority of law proceeded to hear testimony and
also the testimony of respondent, and fixed the amount due
from Mrs. Stout to respondent at the sum of $150, less the
$60 theretofore paid.  The judge was without jurisdiction
in the premises and his order as to respondent's fees was a
nullity.  The settlement between the parties was made by
the payment by the insurance company of $180 to Delfosse
and $762.93 to Mrs. Stout, which was over $500 less than
respondent claimed was due to her on the face of the an-
swer filed by the insurance company.  Shortly after the ap-
pearance in court before Judge Friend, at the time he fixed
respondent's fees, Joseph Stout, the husband of Hazel N.
Stout, called upon respondent with reference to an adjust-
ment of the matter, and there was an agreement between
them that respondent would take $150 in addition to the
$90 allowed by Judge Friend, or a total of $240, rather
than appeal, to which Stout, on behalf of his wife, agreed,
which amount, however, was never paid.  Respondent wrote
to Stout on August 21 with reference to this agreement,
and also wrote to the attorney for the insurance company
on July 21, 1922, of the settlement by which his fees were
fixed at $240.  On August 28, 1922, he by registered let-
ter again notified the insurance company of his claim and
that he would look to it for $565.  There was other cor-
respondence between Stout and respondent up to and in-
cluding the last day of August, 1922, and on September 1,
1922, complaint was made to the Chicago Bar Association
by Mrs. Stout.

There is no evidence in the record that the charges made
by respondent from time to time for his services were not

315—29

the usual, reasonable and customary charges made by other attorneys in Chicago for like services at that time. While it is contrary to the ethics of the profession for an attorney to enter into needless controversy or litigation with his clients over fees and such controversies are injurious to the profession, yet where an attorney performs services for a client and charges no more than such services are reasonably worth, he has a legal right, the same as a man in any other business or profession, to insist upon being paid and to take whatever legal steps are necessary to enforce such payment.

The power of the court to disbar an attorney is to be used in moderation and only on clear proof. Not only must the acts of misconduct charged be proved, but fraudulent or dishonest motives must also be satisfactorily and clearly proved. (*People* v. *Pio,* 308 Ill. 128; *People* v. *Lasley,* 302 id. 595; *People* v. *Barrios,* 237 id. 527.) In the present case there is no evidence whatever of fraudulent or dishonest motives on the part of respondent. On the contrary, the proof shows that in each instance he believed that he was acting clearly within his rights and believed that he was justified in doing the several things of which complaint is made. The commissioner finds that in his opinion all of the difficulties which have arisen with relation to the different specifications of the information were because of respondent's belligerent and headstrong attitude, temper and disposition. While such attitude, temper and disposition on the part of an attorney are to be greatly deplored and respondent should diligently endeavor to correct the same, such attitude, temper and disposition are not of themselves cause for disbarment.

The rule is discharged.          *Rule discharged.*