(No. 22537.— )

IN RE JOSEPH ANDREW LASECKI, Attorney, Respondent.

*Opinion filed October 24, 1934.*

DEYOUNG, J., dissenting.

JOHN L. FOGLE, *amicus curiæ.*

JOSEPH F. ELWARD, (PHILIP CONLEY, of counsel,) for respondent.

Mr. JUSTICE SHAW delivered the opinion of the court:

On April 8, 1933, a complaint was made to the grievance committee of the Chicago Bar Association by Frank J. Krysztofiak, as the administrator of the estate of Thomas

Domagala, charging the respondent with holding and failing to pay over certain sums of money alleged to be due to the administrator on account of funds received from Domagala in his lifetime. Four different sums of money were so received and were represented by four different receipts. Only one of the items is here in question, as it is admitted by all parties that the other sums were properly charged as fees or expenses.

The material facts are as follows: On December 21, 1929, Domagala, in addition to other legal difficulties in which he found himself, was being sued for divorce. On that date he gave to the respondent, as his attorney, the sum of $500, for which he received the following receipt:

"Received from Thomas Domagala five hundred and no one-hundredths to be used as payment in full of all claims made by Angelina Domagala against her husband Thomas Domagala, as contained in case No. B-192873 in the circuit court of Cook county, Illinois.
JOSEPH ANDREW LASECKI."

At the time this money was turned over to the respondent he was apparently a man of some means, as he owned about 200 shares of stock in suburban banks close to Chicago, all of which afterwards failed. After the money had been received by the respondent the negotiations for a settlement with Domagala's wife fell through, and thereafter, during Domagala's lifetime, the respondent made various payments to the wife and her solicitors. The first of these payments was made three weeks after the money had been received and was the sum of eight dollars for temporary alimony. Other payments made by the respondent for the benefit of Domagala were as follows: February 15, eight dollars temporary alimony; February 22, eight dollars temporary alimony; March 22, twenty-five dollars on solicitor's fees; March 22, eight dollars on temporary alimony; April 5, fifty dollars on solicitor's fees; April 5, thirty-two dollars on temporary alimony; July 8, fifty dollars on temporary alimony; July 16, seventy dol-

lars on temporary alimony, and November 21, 1930, sixteen dollars on temporary alimony, making a total disbursed of $275, all shown by canceled checks. Domagala died almost exactly a year after the money was delivered, and his wife secured a divorce from him on the day of his death. The complainant herein was appointed his administrator, but the record does not show when that appointment was made nor that the respondent had any notice of it until some time in 1932. In the meantime, on October 2, 1931, all of the banks in which the respondent was interested had failed. The administrator thereafter made demand upon the respondent for an accounting for the moneys he had received, and the respondent being unable to pay, citation was issued against him, and eventually an order was made in the probate court finding that he owed the estate $331. This, it would now seem, was in error, as the amount due the estate did not exceed $225. This error is entirely the respondent's fault and due to his lack of systematic book-keeping. Thereafter, and before complaint was filed herein, the respondent turned over a certificate of deposit for the sum of $500, out of which the administrator realized $100, and the balance of the $331 which the probate court had found to be due was paid to the estate pending the hearing of the complaint herein.

It appears from the testimony of Irving Stenn, who represented the administrator in this proceeding, that the estate collected a total of $450 from the respondent, including a final payment of $155, which was paid during the hearing on this complaint. If this testimony is true, (and it is uncontradicted,) the estate has recovered from the respondent exactly twice what it was entitled to receive.

The respondent is to be criticised for a loose, careless and unbusiness-like method of book-keeping and for permitting himself to be used as a depositary in an apparent effort to evade what may have been just claims on the part of his client's wife. We cannot, however, find that there

is any evidence of either a criminal or fraudulent purpose on his part in connection with this transaction. It is to be noted that his client lived a year after the money was turned over to the respondent, and during that entire time he was making payments for his client's use. There is nothing to indicate but that Domagala was entirely satisfied with the arrangement. Neither is there anything to indicate that the respondent had any notice of the appointment of an administrator for his deceased client until after the banks had closed and it had become impossible for him to make any further payment than the one he did make by turning over a certificate of deposit. He has already been punished for his careless book-keeping by re-paying the estate twice what he might have paid.

The disbarment of an attorney is the destruction of his professional life, and it can only be warranted by clear and satisfactory proof. (*People* v. *Johnson,* 332 Ill. 84.) This proof must not only show acts of misconduct but fraudulent or dishonest motives. (*People* v. *A'Brunswick,* 315 Ill. 442.) Our discretion in disbarment proceedings is a legal discretion, and it is to be exercised in no arbitrary manner but in accordance with the legal rules and principles which are ordinarily used for determining the guilt of a party charged. (*People* v. *Ader,* 263 Ill. 319; *People* v. *Lotterman,* 353 id. 399.) In the cases of *People* v. *McCaskrin,* 325 Ill. 149, and *People* v. *Lotterman, supra,* we held that the case made by the record must not only be free from doubt as to the act charged but as to the motive with which it was done. In this record we can find no evidence of any intention on the part of the respondent to misappropriate the funds of his client, nor can we find that he acted in bad faith or with any fraudulent purpose. *Respondent discharged.*

Mr. JUSTICE DeYOUNG, dissenting.