(No. 23238.—

IN RE J. KELLY SMITH, Attorney, Respondent.

*Opinion filed December 10, 1936.*

WILLIAM D. KNIGHT, *amicus curiæ*.

ASA J. WILBOURN, and EVERETT LEWIS, for respondent.

Mr. JUSTICE ORR delivered the opinion of the court:

The Pulaski County Bar Association filed a complaint against respondent, J. Kelly Smith, a practicing lawyer of this State, charging him with misconduct and unethical practice. Evidence was heard by the grievance committee of the Illinois State Bar Association for the First Supreme Judicial District, and that committee made a report to the board of governors of the Illinois State Bar Association finding respondent guilty of unethical and unprofessional conduct as charged in the first and second paragraphs of the petition but dismissing the other five charges therein because they were not sustained by the evidence. The committee recommended the respondent's disbarment, and the latter filed exceptions to the committee report. After a further hearing before the board of governors the report of the grievance committee was approved, with the exception that instead of recommending the striking of respondent's name from the roll of attorneys it recommended that he be suspended from the practice of law for one year, or such other action as this court should deem proper. Respondent then filed a motion in this court requesting that the matter be again referred to the board of governors for the purpose of taking additional testimony, and an order was entered granting this motion. Upon taking additional testimony the board of governors filed a report recommending

the suspension of respondent for a period of one year. This motion was ordered to stand as a supplemental report and respondent ordered to file exceptions within ten days. Exceptions of respondent were filed, and the cause is now before us on the supplemental report and exceptions thereto.

The first charge is that respondent, who in 1930 had been appointed by the circuit court of Pulaski county to defend a colored man charged with assault to commit robbery, took his client into a room adjacent to the court room, with the defendant's two brothers, and there had one of the brothers exchange clothes with the defendant; that the respondent then prepared and applied burnt cork to blacken the defendant's face, and also greased his hair with some substance, so that defendant's appearance was changed; that respondent then brought the defendant out into the court room and had the brother who had put on the defendant's clothes take a seat next to respondent, with the defendant seated away at some distance, in an effort to substitute the brother as the defendant in the case. The ruse was quickly discovered by the State's attorney, and the presiding judge ordered the defendant and his brothers to go out of the court room and change back to their other clothes and to wash the black from the defendant's face.

While the conduct of respondent as to this first charge was unethical and deserves censure, we do not believe, from a review of the evidence, that it produced any serious consequences or was seriously regarded at the time. Whether it was perpetrated from a misconceived desire of respondent to gain some cheap notoriety or from a real desire to confuse the State's witnesses in their identification of the defendant is immaterial. The respondent's testimony on the subject, together with the statement of the trial judge, is decisive in arriving at a just conclusion. Respondent justifies the act by saying that on the night of the alleged assault the defendant actually wore his brother's overalls, and he was only seeking to restore him to the same clothing

and appearance he had on the night of the crime. The statement of the judge, A. L. Spiller, who presided at the trial, is even more impressive. He said: "While the jury was being impaneled, the State's attorney raised a question as to the defendant's identity, and suggested to the court that the defendant had been disguised in some manner, and it appeared at that time that his face had been blackened or darkened. I had not noticed it myself, and the defendant had changed clothing with someone else. I ordered the defendant to go and wash his face and put on the clothing that he had been wearing when he was first brought into the court room. I had a conversation with Mr. Smith about the affair and Mr. Smith informed me that he had advised the defendant to change his clothing and to put some burnt cork on his face so that he would appear in the same condition that he did the night of the attempted robbery. He also said that the man who was assaulted, in his opinion, would not identify the defendant if he looked as he did on the night the assault was committed, and Smith said it was his idea that someone else had committed the assault and not the defendant. The man was tried and convicted and is now in the penitentiary. It occurred to me afterwards that I should have granted him a new trial, but it wasn't done. I did not reprimand Mr. Smith for his conduct during the trial. * * * I can say only that I didn't think after the investigation that I made that Mr. Smith made any attempt to impose on the court. I didn't feel that way about it. I was unable to say that he did anything improper. I thought it was imprudent and I think I told him so. I do not think he was attempting to substitute the brother of the defendant or any other person in the place of the actual man who was charged with the crime. I don't think Mr. Smith made any attempt to impose upon the court." In view of this testimony by the trial judge and the fact that the complaint against respondent was not filed for nearly three years after this incident, we do not regard

it as serious enough to warrant either respondent's disbarment or suspension.

The second charge against respondent is that he was indicted in October, 1931, in the United States District Court for the Eastern District of Illinois at East St. Louis, the indictment consisting of three counts, the first of which was that respondent charged and received a fee for services rendered Katie Harper, mother of a war veteran, of $60, or $50 in excess of the fee allowed by law. The second count charged that on or about June 3, 1930, respondent received another fee of $21 from the same Katie Harper when he again should have only charged $10. In the third count he was charged with receiving a fee of $50 for services rendered Rachel Taylor, mother of Virgil Taylor, a deceased veteran, when he could lawfully charge only $10. On November 16, 1931, respondent appeared at a hearing before Federal Judge Fred L. Wham with three attorneys, Asa J. Wilbourn, Walter Warder and W. E. Cummins. On the suggestion of the district attorney he then entered a plea of *nolo contendere* to the indictment. This plea was accepted, he was found guilty as charged in the indictment and was sentenced by the court to pay a fine of $50 on each of the three counts, and further ordered to restore $50 to Katie Harper under the first count, $11 under the second count, and to restore to Rachel Taylor $40 under the third count. Respondent paid these fines and made restoration of these amounts to the women named.

In explanation of these charges respondent claims that he had no intention to evade the law and collect fees in excess of $10 allowed in each of the compensation cases; that the amount given by Rachel Taylor was paid to respondent's two office girls as a gift, to be divided equally between them; that respondent refused to accept it and did not receive any part of this $50, and that Mrs. Taylor, through his efforts, had received approximately $500 in cash and a pension of $20 per month for life, and had made

the gift to the girls in his office as voluntary proof of her gratitude. As to counts 1 and 2, relating to the transaction with Katie Harper, respondent, while admitting that he represented her in two claims for compensation, has submitted evidence to show that he was employed by Mrs. Harper to represent her in the administration of the estate of her deceased son, including adjustment of certain claims against the estate and to make certain title examination as to her land. Respondent further testified that in the presence of his three above named attorneys, the United States district attorney at his office in East St. Louis had advised that he enter a plea of *nolo contendere* to the pending charge. He testified that he then and there protested that he was absolutely innocent of any offense mentioned in the indictment, and told his attorneys that under no circumstances would he consent to a plea of guilty, and that they replied that a plea of *nolo contendere* was not a plea of guilty, and that it would avoid unpleasant publicity of the trial if he would enter the plea mentioned and make restitution to the two former clients. Corroboration of this testimony of respondent is shown by the testimony of Walter B. Warder, one of the attorneys who was present and took part in the proceedings.

Much evidence as to the honesty and good reputation of respondent is included in the record. Leonard Biesswingert, chairman of the executive board of an American Legion post and commissioner of re-employment and relief in Pulaski county, testified that respondent's reputation for honesty and fair dealing in that county was good. B. E. Kerley, county judge of Alexander county, also testified to the same effect. The record shows that respondent handled over one hundred compensation cases of the same general character as those of Rachel Taylor and Katie Harper without complaint of his clients or the American Legion.

Each case of this character must be considered on its own merits, as no hard and fast rule can be laid down to

govern them all. (*In re Borchardt*, 357 Ill. 458; *In re Grosso*, 359 id. 243.) To justify disbarment, proof of carelessness or mistaken judgment is not sufficient. Misconduct complained of must be shown by clear and convincing testimony to have been fraudulent and the result of dishonest and improper motives. (*People* v. *Lotterman*, 353 Ill. 399.) The proof must not only show acts of misconduct but must clearly show they were intended to defraud or deceive. (*People* v. *A'Brunswick*, 315 Ill. 442; *In re Lasecki*, 358 id. 69.) The burden of proof where fraud is charged is upon the party bringing the charge, as all men are presumed to act from honest motives until the contrary is shown. (*People* v. *Hammond*, 356 Ill. 581.) Charges of misconduct, to form the basis for disbarment or suspension of an attorney, must be proved by clear and convincing testimony. (*People* v. *Kerker*, 315 Ill. 572.) The record must disclose a case that is free from doubt, not alone as to the act done but also as to the fraudulent motive with which it is done. *People* v. *McCaskrin*, 325 Ill. 149; *People* v. *Ader*, 263 id. 319.

As we view the evidence under the second charge, it failed to show a fraudulent intent on the part of respondent. While it is true that he failed to separate the charges made to Katie Harper, so the $10 fee in the compensation case could have been distinguished and paid separately from his fees for other legal services rendered in connection with estate and title matters, yet the alleged misconduct charged against him in this respect might easily have arisen through carelessness or ignorance, rather than through any improper or dishonest motive. The proof shows, without refutation, that he had performed some services outside the pension matters and that he believed he was entitled to collect a fee to cover these extra services rendered. He made no plea of guilty to the charges against him in the Federal court, and the proof shows that he strenuously ob-

jected to the entering of any plea of guilty, and agreed only to the entering of a *nolo contendere* when assured that he was not pleading guilty and that by making restitution to his clients he would avoid all further unfavorable publicity.

According to Black's Law Dictionary (p. 820) the plea of *nolo contendere* has the same legal effect as a plea of guilty so far as regards the proceeding in which it is made. "Like a demurrer this plea admits, for the purposes of the case, all the facts which are well pleaded, but is not to be used as an admission elsewhere.—*Com.* v. *Tilton,* 8 Metc. (Mass.) 232; *Com.* v. *Horton,* 9 Pick. (Mass.) 206." The plea of *nolo contendere,* which is still allowed in some jurisdictions, is not a plea, in the strict sense of that word, in the criminal law, but is a formal declaration by an accused that he will not contend with the prosecuting authority under the charge. *Tucker* v. *United States,* 196 Fed. 260; *Jones* v. *State,* 111 Ark. 51, 163 S. W. 177; *State* v. *Alderman,* 81 N. J. L. 549, 79 Atl. 283; *Young* v. *People,* 53 Colo. 251, 125 Pac. 117.

The mere failure of an attorney to exercise good judgment in a transaction with his client, due to his inexperience, where no motive or intent to cheat or defraud is shown, does not constitute ground for disbarment. (*People* v. *Charone,* 288 Ill. 220.) As the evidence here does not disclose any fraudulent intent or dishonest motive on the part of respondent, we do not believe it justifies his disbarment or suspension from the practice of law. We unhesitatingly censure him for advising his client to change clothing in an effort to deceive the People's witnesses, and for the carelessness, laxity of methods and ignorance of Federal regulations displayed in his handling of the two compensation cases.

*Respondent censured.*