(No. 26688.— )

IN RE FRANK G. BRUMUND, Attorney, Respondent.

*Opinion filed November 17, 1942.*

AMOS M. PINKERTON, for the Illinois State Bar Association.

HADLEY & LEREN, (CHARLES W. HADLEY, of counsel,) for respondent.

Mr. JUSTICE WILSON delivered the opinion of the court:

A report filed by the board of governors and the committee on grievances of the Illinois State Bar Association, as our commissioners under Rule 59, concerning a complaint by Meyer Lipschutz charging Frank G. Brumund with unprofessional conduct, recommends his suspension for two years. In making their recommendation the commissioners overruled the recommendation of the committee on grievances of the seventh judicial district "that the circumstances of this complaint do not warrant disbarment proceedings" and the affirmative recommendation that Brumund be censured by the board of governors and expelled from membership in the State association. Respondent has filed exceptions to the report of the commissioners, and the cause is submitted upon the record and proofs.

Frank G. Brumund, the respondent, was licensed to practice law on December 13, 1918. He has since been

engaged in the practice of his profession in Joliet, where he has held responsible positions as an assistant to the probate judge of Will county, an assistant State's Attorney, and a special master in chancery. He has also been active and held high office in several civic organizations. From the complaint made by Lipschutz, respondent's answer, complainant's reply thereto, and the evidence adduced, pertinent facts appear. September 8, 1926, Benjamin C. Litchfield, executed his promissory note for $1175 payable six months from date to the order of Meyer Lipschutz, in New York City. Lipschutz was a letter carrier employed by the postal department of the city and Litchfield was then engaged in business in New York. Afterwards, Litchfield came to Joliet where he established himself in the women's apparel business. Lipschutz eventually traced Litchfield to Joliet and, in the summer of 1933, visited the city incident to his efforts to collect the debt owing him. He retained respondent to represent him in the collection of the note for $1175. Respondent orally agreed to undertake the collection on a contingent-fee basis of thirty-three and one-third per cent. Litchfield, it appears, had assumed the name of Robert Litchfield for business purposes in Joliet and, when respondent first visited him, denied his identity as the maker of the note. Subsequently, Litchfield admitted that he was the debtor and thereafter paid respondent twenty dollars on each of five separate ocasions to apply on his indebtedness to Lipschutz. Correspondence between respondent and the complainant in 1933 relates, among other things, to an attempt by Litchfield to obtain a reduction in the amount of his obligation. September 18, 1933, respondent wrote to Lipschutz saying, "He has employed an attorney by the name of Mr. Krusemark and they contend that the only amount ever borrowed from you was $750.00 and not $1175.00 as set out in the note. He further states that you agreed that if he would get you a job working in the Postal Department that you would cancel the obliga-

tion." In this letter, respondent stated that Litchfield was willing to pay twenty dollars monthly provided Lipschutz reduced the amount of the debt to $750. September 20, Lipschutz wrote respondent declining to make the requested reduction, adding "Kindly sue for the $1175 plus $1.30 for the stoppage of the note. $20.00 I give you to investigate the deeds to his mother's property, which I believe he has hidden in his mother's name, $60 for the trip to Joliet, outside of the days I lost trying to find him and your expense. * * * I want every cent of my money." Respondent, in obedience to these directions, prepared a complaint to be filed in the circuit court of Will county and forwarded it to Lipschutz who acknowledged the attached affidavit. About December 1, 1933, Lipschutz advised respondent that he did not see the wisdom of a lawsuit, and the complaint was not filed. The payments made, amounting to $100, were not reported to Lipschutz and his inquiries from time to time in 1933 and 1934 concerning the status of the collection were not answered by respondent. The latter stated that some collectors remitted to their clients immediately upon making collections, but that others did not do so, and that he had hoped to obtain more money before remitting. It appears that Hayes Kennedy, a lawyer practicing in Chicago, on June 22, 1934, wrote a letter to respondent informing him that attorney Norman L. Marks, New York, had asked him to obtain information concerning Lipschutz' claim against Litchfield. Neither this nor two letters to respondent in August, 1934, were answered. Respondent testified that in November, 1934, he furnished Kennedy with a detailed statement of the transaction and that the latter did not think his charges of $100 for services rendered unreasonable. He assumed, according to his testimony, that Kennedy reported to Marks and that the latter, in turn, advised Lipschutz. Respondent also said that at a later date attorney James W. Faulkner, Joliet, inquired with respect to the progress of the collec-

tion and, when advised that Kennedy had reviewed the transaction, said: "If Hayes Kennedy had been in and has gone over everything, I will have nothing to do with it." Neither Kennedy nor Faulkner was called as a witness at the hearings.

In the meantime, in September, 1934, Litchfield filed a voluntary petition in bankruptcy. The claim of Lipschutz was not listed among his liabilities. According to Litchfield, he did not list Lipschutz as a creditor "because I owed that money in New York, and, it had nothing to do with the business which had caused me to go into bankruptcy." Respondent learned of the proceedings and spent considerable time in the office of the referee in bankruptcy, John P. Haley, examined the schedules, attended the first meeting of creditors and conferred with Albert H. Krusemark, attorney for Litchfield. Haley corroborated respondent, adding that he conferred with him relative to the unscheduled claim of a creditor. The rendition of these services was not specifically authorized by Lipschutz but respondent took the view that he was under a duty to follow the bankruptcy proceedings. Litchfield was hopelessly insolvent and, since it appeared there would be no payments to creditors, respondent did not file a claim and did not advise Lipschutz of the pendency of the proceedings. Lipschutz, the record discloses, learned from Litchfield that the latter had paid money to respondent to apply on his indebtedness, a letter stating that he had paid $120 on account. Litchfield, at the hearings, had no recollection as to whether he had paid $100 or $120. In any event, Lipschutz, admittedly, had notice, in 1934, of payments from Litchfield to respondent. He also learned of the bankruptcy proceedings, in 1934, and communicated with Litchfield who had left Joliet and gone to Champaign where he remained for five years, returning to Joliet in 1939. According to respondent, he attempted to locate Litchfield during this period, but without success. At no

time during the five-years' period, 1934 to 1939, did Lipschutz seek to obtain from respondent any portion of the money he had collected. Krusemark testified that respondent made frequent inquiries between 1934 and 1940 concerning Litchfield's whereabouts. It appears that Litchfield departed without notifying his attorney and, we note, without paying him for services rendered in the bankruptcy matter. In August, 1939, Lipschutz again came to Joliet and effected an arrangement with Litchfield, reducing the latter's debt to $500, the debtor having paid $100 direct to Lipschutz in payments of $10 each. Litchfield gave Lipschutz two post-dated checks for $250, neither of which was paid. Lipschutz did not see respondent upon his visit to Joliet in 1939. Subsequently, on February 9, 1940, Lipschutz wrote to respondent requesting that his papers pertaining to the claim against Litchfield be returned, pointing out that according to "our verbal agreement you were to receive (⅓) one-third of all payments," and asking that an accounting of the collections be made, and concluding, "If I don't hear from you, and if I don't get the papers, I will go to the proper authorities and force you to give them up." Respondent did not answer this letter. March 1, 1940, Lipschutz instituted this disciplinary proceeding.

Nine prominent witnesses testified to respondent's good reputation for veracity, honesty and integrity. Among these were the State senator from the senatorial district including Will county, the county judge and State's attorney of Will county, the referee in bankruptcy for the district, the president of the local and county bar associations, and the attorney for Litchfield.

The commissioners contend that the facts recounted demonstrate that respondent has wilfully and knowingly failed in his duty to promptly report and account for money collected for his client, Lipschutz, and that his conduct requires discipline. Respondent insists that the gist of the proceeding is merely a dispute over fees between an attor-

ney and client, and that the single question presented is whether the services rendered were under the collection-fee arrangement or whether he was entitled to compensation for services rendered in addition to the collection fee. The report of the commissioners does not charge that respondent's alleged misconduct was fraudulent and the result of dishonest and improper motives, nor that the amount of money retained as fees for services rendered was unreasonable or excessive and made for the purpose of converting his client's funds to his own use. To warrant either disbarment or suspension, the record must be free not only from doubt as to the act charged but also as to the motive with which it was done. (*In re Smith,* 365 Ill. 11; *In re Lasecki,* 358 id. 69; *People ex rel. Chicago Bar Ass'n* v. *Hammond,* 356 id. 581; *People ex rel. Chicago Bar Ass'n* v. *Lotterman,* 353 id. 399.) In the present case, respondent collected at least $100 on the note signed by Litchfield, prepared a complaint to be filed, and rendered services in the Litchfield bankruptcy matter for which he claims he was entitled to remuneration. In addition, Lipschutz himself collected $100 from Litchfield, and respondent maintains that he was entitled to one third of the moneys paid directly to Lipschutz. We do not assume to determine whether respondent was entitled to additional remuneration for his services in the bankruptcy proceeding nor whether he was entitled to a portion of the money collected by the creditor personally. It suffices to observe that respondent's good faith in making the contention that he was entitled to remuneration in addition to one third of the $100 collected by him is not impugned by the commissioners. In particular, had he failed to investigate the bankruptcy matter he might well have subjected himself to criticism for neglecting to properly protect the rights and interests of his client. If Lipschutz feels that respondent owes him money, recourse to the civil courts is open

to him. Where, however, the gist of a client's grievance against his attorney is merely a dispute over fees for services rendered, as here, neither this court nor our commissioners will serve as a collection agency.

We have a case before us of inaction on the part, not only of respondent, but, for five years, on the part of his client who certainly was not lacking in persistence and who was fully advised of the status of his claim. Respondent should, of course, have reported to Lipschutz and accounted to him promptly for the money collected from Litchfield. In short, respondent's conduct does not reflect a high sense of legal ethics but it nevertheless does not constitute moral turpitude. His derelictions were acts of omission rather than acts of commission. A consideration of all the facts and circumstances including, among others, respondent's preparation of the pleadings incident to instituting an action on the note, his services in connection with Litchfield's bankruptcy, his client's actual knowledge of the collections made and of the bankruptcy and his five-years' silence, and the client's collections personally made in 1939, impel the conclusion that respondent's retention of the entire amount collected on the note and his neglect and carelessness in not advising his client of the collections, while not condoned, are not so flagrant as to justify the severe disciplinary recommendation of the commissioners.

Since proof of professional misconduct sufficient to warrant his suspension, as recommended, is neither clear nor convincing, the recommendation of the commissioners is denied, and the rule discharged.

*Rule discharged.*