(No. 26450.—
*In re* J. KELLY SMITH, Attorney, Respondent.

*Opinion filed January 18, 1944.*

AMOS M. PINKERTON, of Taylorville, for the Illinois State Bar Association.

EVERETT LEWIS, of Benton, for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on the report of the Grievance Committee and Board of Governors of the Illinois State Bar Association acting as commissioners of this court, to consider a complaint against the respondent, growing out of conduct which is alleged to be unprofessional and calcu-

lated to bring the profession into disrepute. Respondent has filed exceptions to the report and the case has been briefed.

The facts on which the commissioners' report is based are not in dispute and are these: One H. W. Allen, who filed this complaint against respondent, was, in 1928, indicted in the circuit court of Pulaski county on a charge of larceny. Before he could be arrested he left the State of Illinois and took up his residence in St. Louis, Missouri. In November, 1933, his son called upon respondent at his office in Mounds, Illinois, and retained him to make, if possible, an arrangement with the State's Attorney, whereby Allen would be permitted to return to Pulaski county to live. A retainer fee of $5 was then paid. Thereafter the respondent had a number of conversations with the State's Attorney concerning the matter but did not succeed in getting him to agree that Allen could return and take up his residence in the county without the danger of an arrest. It was agreed, however, that he might, without interference, return for short visits.

In April, 1935, respondent wrote to Allen at St. Louis advising him that it would not be possible to make any arrangements with the State's Attorney by which Allen would be permitted to take up his residence in Pulaski county again. He also wrote Allen that the attention he had already given to the matter was worth fully $25, but that he would, for a total fee of $50, "get this prosecution off the docket." He urged an immediate reply stating that the April term of the circuit court would open soon and he would like to get the case off the docket on the first day of the term. Two days later he wrote to Allen, again stating that if the latter wished to get his case off the docket, to send respondent $25 by return mail, and that when he had made the arrangements he could send him the other $25. This apparently elicited no response. On April 15 respondent again wrote Allen suggesting that he

send $50 to the cashier of a bank at Cairo, with instructions that he deliver that amount to respondent "when I produce to him a certified copy of an order of the Circuit Court of Pulaski County dismissing pending prosecution against yourself." Allen sent this money to the bank and so advised respondent.

On April 20 respondent went to the office of the clerk of the circuit court and inquired whether the case against Allen was still on the docket. She, on investigation, told him it was not. He then stated that he wanted a certificate that it was off the criminal docket. The circuit clerk testified that she made a search and found the case was not on the trial docket and that she signed a certificate to that effect and gave it to the respondent. She also testified that respondent said that if the case was off the docket the State's Attorney had dismissed it, that he had talked with him. The circuit clerk testified that she did not put in the date when the case was stricken from the docket for leave to reinstate and that respondent did not ask about the date but seemed to be interested in knowing whether it was still on the docket. She also testified that when she examined the records of her office she found that the indictment against Allen was stricken "with leave to reinstate" in January, 1931, some four years before the negotiations between respondent and Allen. There is nothing in the record to indicate that respondent knew, when asking for the certificate or during the negotiations with Allen by which he was to receive the $50 from the bank, that the cause had been stricken from the docket with leave to reinstate.

It appears also that the complaining witness Allen later returned to Pulaski county on different occasions and during these visits retained the respondent to represent him in several property matters, and that when respondent began pressing him for his fee charged for such subsequent services, Allen, for the first time, charged him with

fraud in procuring from him the sum of $50 as a fee for having the case against him stricken from the docket, when as a matter of fact it was not on the docket but had been stricken with leave to reinstate. It does not appear from this record what the reasonable fees would have been for the work which respondent did for Allen before and after securing the $50.

Respondent testified that after Allen's son came to visit him he had numerous conversations with the State's Attorney who told him that Allen was under indictment; that he did not look in the records; that as he understood it, his employment was to get permission for Allen to come back to his home, and after numerous conversations covering a considerable period of time, he made an arrangement with the State's Attorney whereby Allen might be permitted to visit his home for brief visits but not to stay any length of time. Respondent notified Allen of this arrangement and told him that the services were worth $25 but that he would get the case off the docket for him for $50, to which Allen replied that he wanted to know more about it before he paid the fees. Respondent testified that when the circuit clerk told him the case was off the docket he prepared a certificate, which she signed, to that effect. He testified he did not know how it got off the docket or by whom, but presumed the State's Attorney had taken it off as a result of his conversations. He testified that later he was retained by Allen and did considerable business on property matters for him but was unable to get any pay for it. This evidence is undisputed.

The gravamen of the charge against respondent appears to lie in his letter of April, 1935, in which he wrote: "Now I make the following offer: If you will send me fifty dollars ($50.00) I will get this prosecution off the docket for you and if I fail to do so will return the fifty dollars ($50.00) to you forthwith." Respondent testified that he did not know that at the time this letter was written the

case had been stricken from the docket with leave to reinstate. His letter contained a promise that in case he did not procure the striking of the indictment, he would return the $50. There is no evidence that he did return it when he learned that the case had already been stricken with leave to reinstate, as his letter clearly obligated him to do. He does testify, however, without contradiction, that he thereafter rendered substantial services for Allen for which he was not paid and has not been paid.

We think that even if respondent did not know, at the time of this correspondence, that the indictment had been stricken from the docket, it was incumbent upon him, upon learning such fact, to return the $50 to Allen, as he promised in his letter. The fact that he did not do so does not square with dealings that ought to exist between an attorney and his client.

This court is charged with the duty of determining whether the conduct of respondent was unethical and requires that he be penalized. As above stated, the record does not establish that he knew he was demanding money from Allen for a service he did not and could not render. He testified that when he learned the case had been stricken he supposed the State's Attorney had it done at his request. It is clear, however, that he should have notified his client and restored the fee when he did learn that the thing he had agreed for a fee to do had already been done. This he did not do. While we do not think the acts of respondent as shown by this record justify disbarment, his conduct was once censured by this court, (*In re Smith,* 365 Ill. 11,) and we are of the opinion that on this record he should stand suspended from the practice of law for a period of six months following the date upon which this judgment becomes final.