(No. 48894.-

*In re* FRANK H. WALKER, Attorney, Respondent.

*Opinion filed June 1, 1977.*

DOOLEY, CLARK and MORAN, JJ., specially concurring.

Philip Schickedanz, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Frank H. Walker, of Mt. Vernon, *pro se.*

MR. JUSTICE RYAN delivered the opinion of the court:

Respondent, Frank H. Walker, was admitted to the Illinois bar on October 11, 1934. On March 21, 1974, he was indicted on three counts of filing false income tax returns in violation of section 7206(1) of title 26 of the United States Code. He entered a plea of *nolo contendere* to count III of the indictment, and the court found him guilty and fined him $5,000 plus costs. Counts I and II were dismissed.

The administrator of the Illinois Attorney Registration and Disciplinary Commission filed a complaint with the commission's Hearing Board recounting the indictment and the plea, and alleging that Walker's conviction tends to bring the legal profession into disrepute. The matter was assigned to a panel of the Hearing Board. The report of the Hearing Board recommended that respondent be sus-

pended from the practice of law for one year. Respondent filed exceptions to the report. The Review Board of the Attorney Registration and Disciplinary Commission filed its report, unanimously recommending that respondent be disciplined. That was the only recommendation of the board in which there was a concurrence of at least five members, as required by Supreme Court Rule 753(d) (58 Ill. 2d R. 753(d)). There was disagreement over what form the discipline should take. The "majority" report, submitted by four members of the Review Board, affirmed the Hearing Board's recommendation of suspension for one year; three members filed a minority report which recommended censure as the proper measure of discipline. Two members of the Review Board did not participate.

It is indisputable that the Review Board was correct in finding that some discipline of respondent is warranted. We need not consider whether the offense defined in section 7206(1) of title 26 of the United States Code is a crime involving moral turpitude. The Hearing Board found that the respondent's conviction of that offense tended to bring the legal profession into disrepute and warrants discipline. This finding was concurred in by the Review Board. Although a mere conviction may not necessarily establish moral turpitude, it does establish misconduct constituting grounds for discipline in the absence of mitigating circumstances. (*In re O'Hallaren,* 64 Ill. 2d 426.) As we stated in *In re Andros,* 64 Ill. 2d 419, 426: "An attorney, above all others, is aware of the responsibility to observe the requirements of the law." We have reviewed the record and conclude that the finding that the respondent's conviction tended to bring the legal profession into disrepute is supported by clear and convincing evidence and justifies disciplinary action. Indeed the respondent's brief does not seriously contend otherwise. The issue before us, then, is what quantum of discipline is merited by respondent's conviction. In making that determination, we may look beyond the plea and the convic-

tion, not to consider whether discipline is warranted, but to consider the nature of the discipline justified by the conduct of respondent. *In re Andros,* 64 Ill. 2d 419; *In re Crane,* 23 Ill. 2d 398.

Respondent entered the practice of law in 1935. In 1938 he was elected to the first of his three terms as county judge. After service in the armed forces during World War II he served one term in the Illinois legislature. Following that he was a hearing officer with the Illinois Commerce Commission for eight years. He was elected to the office of State's Attorney of Jefferson County in 1966, and served in that capacity until 1972. During his tenure as State's Attorney he also engaged in the private practice of law. It was in 1969, when respondent was endeavoring to simultaneously fulfill the duties of State's Attorney and maintain a private practice, that the events which ultimately led to the instant action occurred.

The indictment which forms the basis for the present disciplinary action charged that for the year 1969 respondent had taxable income of $22,602.68 but reported only $13,055. Although respondent was prosecuted by the Federal authorities, his plea accepted by the district court, and a $5,000 fine imposed, the record reflects that attorneys for the office of the regional counsel of the Internal Revenue Service stated in a report after investigating the respondent "that it was felt that these unreported receipts that were reflected on the return lacked a criminal intent." It is clear that respondent's failure to report all his taxable income was the result of a bookkeeping system so shoddy that it has been variously characterized before this court as incomprehensible and nonexistent. Respondent employed neither an accountant nor a full-time bookkeeper in 1969, a situation which has since been remedied. His books were kept by himself and a number of high school students whom he employed part time. It appears that income for any one year would frequently be entered in a ledger book which was putatively dedicated to another

year's records. Prior to 1969, this had once resulted in respondent overstating his income and receiving a tax refund; in 1969, the opposite occurred. In short, the proper amount of income was recorded for the year 1969, but many notations were in the wrong books and so were not found when the year's income was totalled by his office help for tax purposes. When respondent discovered the error, he filed an amended return, 14 months prior to his indictment. The income reported on this amended return, this time calculated after searching all the ledger books for 1969 income, so closely approximated the correct income figure that the tax to be paid on it was just $292 less than the tax liability eventually assessed against respondent's 1969 income.

There is no question but that respondent's conduct fell short of that degree of care which an attorney should give to the keeping of his income records and cannot be condoned. His apparent lack of fraudulent intent, however, as recognized by the Internal Revenue Service's own attorneys, together with a background in public service which can only be labeled exemplary, mitigate against the suspension recommended by the "majority" report of the Review Board. We, therefore, hold that in light of respondent's conduct and all the aforementioned extenuating circumstances he is deserving of the censure of this court.

*Respondent censured.*

MR. JUSTICE DOOLEY, specially concurring:

Experience as a commissioner of this court hearing attorney disciplinary matters while a member of the Board of Managers of the Chicago Bar Association fostered an opinion that when the penalty warrants no more than censure, the interests of the profession and the public are not served by memorializing the reprimand in the reported decisions of this court. Censure should be accomplished by an order of the court. This case makes what was once a

mere opinion now a conviction.

As the opinion points out, there is no evidence to suggest that the discrepancy between respondent's reported taxable income and actual taxable income for the year in question was a result of any criminal or fraudulent intent. There are certain inconsistencies in the position of the government which caused respondent to be indicted. As Mr. Justice Ryan points out:

"*** There is no evidence to suggest that this discrepancy, though not insignificant, was the product of any criminal or fraudulent intent. Attorneys from the office of the regional counsel of the Internal Revenue Service concluded that respondent's actions 'lack a criminal intent.' "

This is actually a prosaic case of an error in the completion of income tax returns. When respondent discovered the error, he filed an amended return 14 months prior to his indictment. We venture to say that each working day in each Internal Revenue Service office in this country an amendment is filed because of error in the taxpayer's original income tax return. Yet the taxpayer is not indicted. Are we, as judges, to be immune to the realities of life?

But of even greater significance is that we are imposing the penalty not so much for conduct, but for the conviction. In *In re Crane* (1961), 23 Ill. 2d 398, 400-01, the court stated:

"While the conviction is conclusive evidence of guilt, it does not preclude the consideration of other evidence for the purpose of determining the appropriate disciplinary action. *After all, a respondent is being disciplined not because of his conviction but because of his conduct.* The actual conduct itself is certainly relevant to a determination of the appropriate discipline to be accorded. Just as every conviction of a crime does not require the same punishment, so all convictions of

crimes involving moral turpitude do not require the same discipline. *Thus, a consideration of the actual conduct of the respondent is not only proper, but may be indispensable, to an informed appraisal of the appropriate disciplinary action."* (Emphasis added.)

This court has continuously referred to *In re Crane* in its subsequent disciplinary decisions. See *In re Andros* (1976), 64 Ill. 2d 419, 424; *In re Fumo* (1972), 52 Ill. 2d 307, 310; *In re Hutul* (1973), 54 Ill. 2d 209, 214; *In re Grossgold* (1974), 58 Ill. 2d 9, 10.

The majority has manifested its deep sense of fairness in its description of this unhappy situation.

But we do not agree that the duty of an attorney in keeping income records is any greater than that of any other citizen. There is nothing in any canon of ethics or in the fidelity to the principles of a lawyer that he has an obligation different from others in keeping records of his own income when the interests of clients are in nowise involved.

Frank Walker did not bring the profession into disrepute. He injured no one except himself. This record indicates that this member of our bar, who has given so much to public service, now in his seventieth year, has until this unhappy event enjoyed an excellent reputation— something which cannot be bought or sold in any market place, but is acquired only by cultivation in all phases of human conduct. By memorializing his misfortune, we unduly infringe upon that which represents the efforts of a lifetime.

Nor do we stand alone in this position. Many years ago, Mr. Justice Cardozo, while a member of the Court of Appeals of New York, in *People ex rel. Karlin v. Culkin* (1928), 248 N.Y. 465, 478, 162 N.E. 487, 492, 60 A.L.R. 851, 859, involving the investigation of a lawyer's conduct, expressed these thoughts:

"The argument is pressed that in conceding

to the court a power of inquisition we put into its hands a weapon whereby the fair fame of a lawyer, however innocent of wrong, is at the mercy of the tongue of ignorance or malice. Reputation in such a calling is a plant of tender growth, and its bloom, once lost, is not easily restored. The mere summons to appear at such a hearing and make report as to one's conduct, may become a slur and a reproach."

It is our hope that we have pointed up the exemplary professional life of respondent with the same effect as the description of his misfortune entails.

As we have noted, this censure could be accomplished by an order of court—a vehicle which would accomplish the same end as these opinions. Here the penalty is out of proportion to the charge.

CLARK and MORAN, JJ., join in this special concurrence.