(No. 49561.—

*In re* ROLAND W. LADA, Attorney, Respondent.

*Opinion filed January 27, 1978.*

Jack Toporek, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Lawrence W. Harris, of Chicago, for respondent.

MR. JUSTICE RYAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against Roland W. Lada, an attorney, admitted to practice in Illinois on January 10, 1945, alleging that he had engaged in conduct tending to defeat the administration of justice and to bring the legal profession into disrepute. A hearing panel of the Attorney Registration and Disciplinary Commission held with the Administrator and recommended that the respondent be suspended from the practice of law for a period of two years. The Review Board adopted the panel's findings over the respondent's exceptions, and recommended suspension for two years and until further order of the court. The board's recommendation is subject to our review pursuant to Supreme Court Rule 753(e) (58 Ill. 2d R. 753(e)).

In late 1969 William Richer hired the respondent to

represent him in a divorce proceeding instituted by his wife in the circuit court of Cook County. Richer paid the respondent a $350 retainer fee at the time of the initial contract. In December a conference took place between the parties and their attorneys, at which time it became clear that both parties desired a divorce. No agreement was reached, however, concerning the apportionment of interests in the marital home in North Barrington in Lake County, nor was there any agreement as to the payment of attorney's fees.

In March 1970, Richer left Illinois, apparently without notifying the respondent. After repeated attempts, the respondent eventually located Richer and requested him to return to Illinois to discuss matters pertinent to the pending divorce litigation which was scheduled for trial on October 21, 1970. At that meeting, which took place on September 4, it apparently became clear to the respondent that Richer had no intention of appearing at the pending divorce trial, despite the respondent's admonition that he would most likely lose everything if he did not make an appearance. In order to facilitate negotiations regarding the family residence at the pending trial, and in anticipation of a court order granting the residence to Mrs. Richer, the respondent advised Richer to execute a quitclaim deed conveying all his interest in the residence to his wife. The deed was executed and the respondent was authorized to deliver it to Mrs. Richer if and when necessary. Also at the September 4 conference, the transaction transpired which is at the bottom of the present controversy. For reasons not entirely clear, the respondent advised Richer to give him a 30-day promissory note for $3,500, a sum roughly representing one-half the amount of Richer's equity in the Barrington residence, which was owned by Richer and his wife as joint tenants. While the respondent has not been consistent in explaining his precise motive for obtaining the note, from what we gather from the record, briefs, and

oral argument, the note served the dual purpose of giving the respondent some security for his $1,350 fee, only $350 of which had been collected at that time, and, according to what the respondent allegedly told Richer, also gave him a "wedge" in protecting Richer's interests at the divorce trial. In any event, the respondent told Richer that anything he collected on the note over the money still owed for payment of his fee would be returned to Richer. The respondent obtained a judgment by confession on the note on December 9, 1970, 13 days before the divorce trial took place. He immediately filed a memorandum of judgment in the office of recorder of deeds in Lake County, Illinois, thereby placing a judgment lien on the marital residence.

The divorce trial took place on December 22, 1970, and lasted approximately two days. During that time evidence was heard by the court, most of which concerned the apportioning of the interests of the parties in real and personal property, including the Barrington residence. Richer did not appear at the trial but was represented by the respondent. At the conclusion of the hearing, the court awarded the home to Mrs. Richer in lieu of alimony, and the respondent, pursuant to the court's order, delivered to her the quitclaim deed that Richer had executed on September 4, 1970. Both parties were ordered to pay their respective attorney's fees. At no time during the hearing had the respondent indicated to the court the fact that he had obtained a judgment lien on the marital residence.

The Administrator's complaint alleges that the respondent, by failing to inform the court of his lien upon the marital residence, prevented the court from obtaining information which was crucial for a proper judicial determination concerning the settlement of property and apportionment of attorney's fees. In particular, the Administrator is concerned with the fact that the respondent's lien was in potential conflict with the court's order

that each party pay his own attorney's fees, in that enforcement of the lien would have resulted in the payment of the respondent's fees by Mrs. Richer, who had obtained complete title to the residence as a result of the court's order. In the opinion of the Administrator, the respondent deliberately misled the court and perpetrated the equivalent of a fraud upon the court by standing by in silence and allowing the court to fashion an order which, in light of the respondent's lien, could have these incongruous and unjust results.

Considering it to have been improper for the respondent not to have informed the court of his lien upon the marital residence, we are not persuaded that his silence in that regard merits the harsh sanction of a two-year suspension. It should be remembered that this was a contested hearing during which respondent did not present any evidence or make any representation that could have misled the court.

Under the circumstances, the respondent's failure to inform the court of his lien on the marital residence fell short of perpetrating a fraud upon the court. The court was not prevented from entering a fair and judicious divorce decree. While it is difficult to speculate, there is no evidence to support the conclusion that had the trial judge been aware of the lien, his order, as it affected the disposition of property between the parties, would have been any different. Also, according to the record, the respondent did nothing surreptitiously or deceptively. The memorandum of judgment had been a matter of public record for almost two weeks. Mrs. Richer's attorney did not inquire into the existence of any possible cloud upon the title of the Barrington residence at the trial, nor had he checked at the Lake County recorder of deeds to ascertain if any such lien existed. Of course, a different situation would be presented if the respondent had intentionally misled the court by stating that the title of the property

was free from any encumbrance. However, that is not our case.

While we do not feel the respondent's conduct in this case was serious enough to be identified as a fraud upon the court, we do not think it comported with accepted professional standards, and it warrants the imposition of a sanction upon the respondent. As indicated above, however, we are of the opinion that, under the circumstances, the recommended sanction of a two-year suspension is too severe.

The record shows that the respondent is approximately 61 years old and has not previously been subject to disciplinary action. Consequently, in light of the foregoing considerations, we are of the opinion that an appropriate sanction is that the respondent be censured.

*Respondent censured.*

MR. JUSTICE DOOLEY, dissenting:

It has long been my opinion that wherever the discipline imposed upon a member of the bar of this court justifies no more than censure, it should not be memorialized in our reported decisions. There is a strange paradox in such therapy. An order of court can accomplish the same objective. See my specially concurring opinion in *In re Walker* (1977), 67 Ill. 2d 48, 52.

Here I do not agree that respondent's conduct justifies censure. Respondent was expected to represent a client's interest in a divorce proceeding notwithstanding the client's absence. He had no guarantee of a fee. Accordingly, he took a note from the client—a compulsory sort of thing to do under the circumstances—and obtained judgment on the note and a lien on the marital household. Without a judgment and lien on the real estate, the note, the security for his fee, would be meaningless.

In the contested adversary divorce proceedings, respondent made no representation of any character. True,

he did not advise the court of the judgment and lien against the marital residence. But what duty did he have to disclose his arrangement with his client? None, according to the majority or any canon of professional conduct. Respondent in nowise interfered with the court's decree and, after its entry, did not assert a judgment against the marital residence. More than that, he adhered to his agreement with his client as to the fee.

But disclosure is not the crux of the question. Actually, what was respondent's misconduct?

The majority offers the best answer to this question when it states:

"It should be remembered that this was a contested hearing during which respondent did not present any evidence or make any representation that could have misled the court.

Under the circumstances, the respondent's failure to inform the court of his lien on the marital residence fell short of perpetrating a fraud upon the court. The court was not prevented from entering a fair and judicious divorce decree." (69 Ill. 2d at 585.)

This dissipates the basis for discipline.

As I see it, the only basis for discipline arises from a misconception of our function in a disciplinary proceeding. Our duty is not to face-lift the public image of the legal profession at the expense of one of its members. On the contrary, this court long ago spelled out our function in a proceeding of this character:

"Such duty, and the manner in which it is exercised, must not be despotic, but the charges must be sustained by clear and convincing proof and the misconduct must be shown to have been fraudulent and the result of improper motives, and the proof must show intent. (*In re Smith,* 365 Ill. 11.) The courts must not exercise their

supervisory control in an arbitrary manner, but must show a legal discretion in the exercise thereof. *In re Lasecki*, 358 Ill. 69." (*In re Donaghy* (1948), 402 Ill. 120, 123.)

The contention of the Commission falls dismally short of meeting these criteria. The Commission confuses honor with the oversensitive standard, the punctilio of honor.

Perhaps it is easy for those who have never felt a wound to jest at scars. But I regret that Roland Lada, who this record shows has served honorably in a great profession, should now have this blot on his reputation, which, after all, is a professional man's true treasure.