(No. 65943.—

*In re* THOMAS H. STERN, Attorney, Respondent.

*Opinion filed September 22, 1988.*

Scott Renfroe, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

George B. Collins, of Collins & Bertelle, of Chicago, for respondent.

JUSTICE RYAN delivered the opinion of the court:

On January 21, 1986, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a one-count complaint against Thomas H. Stern and Clayton Roger Test. The complaint charged Stern and Test with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; knowingly making a false statement of law or fact; participation in the creation or preservation of false evidence; failure to promptly reveal fraud upon a tribunal; and engaging in conduct which tends to defeat the administration of justice or brings the court or legal profession into disrepute.

On December 9, 1986, the Hearing Board filed its report and recommendation. The report concluded that the evidence did not support sanctions for failure to promptly reveal fraud and creation of false evidence, but that the remaining charges had been established by clear and convincing evidence. The Hearing Board recommended 30-day suspensions for Stern and Test.

On July 31, 1987, the Review Board issued its report, finding that the evidence did not support sanctions against Test. The Review Board affirmed the Hearing Board's findings of fact and conclusions of law as to

Stern, but increased the recommended period of suspension to 90 days. Respondent Stern filed exceptions. This court denied the Administrator's petition for leave to file exceptions. Only Stern's case is before this court.

The facts, though complicated, are essentially undisputed. The issue before this court is whether Stern's conduct warrants discipline and, if so, what sanction should be imposed.

In December of 1981, Stern's marriage became the subject of a dissolution proceeding in the circuit court of Cook County. In February of 1982, an order was entered in the course of that proceeding which required Stern to maintain health insurance coverage for his wife and the couple's minor children. Stern complied through a group policy which also insured Stern and the employees of Stern's law office.

In October 1982, Test became associated with Stern's law firm as an independent contractor. Due to that status, Test was not covered by the existing group policy. Test asked Stern whether such coverage could be arranged, and Stern agreed. Stern gave Test the responsibility for procuring new insurance, and Test set out to obtain quotes from different insurance companies.

Stern and Test ultimately decided to do business with Emiliano Mendoza. Mendoza provided quotes, took a census of the members of the group and, on December 7, 1982, accepted a check from Stern for the amount of the premium. At that time, Mendoza assured Stern that the policy would be effective as of the date the applications were signed. On December 9, Test wrote a letter of confirmation to Mendoza and followed that up with a phone call approximately one week later. The Hearing Board found that both Stern and Test believed that the new insurance was in effect at that time.

Meanwhile, Stern's previous policy had been allowed to lapse for nonpayment of premiums. On December 27,

1982, Mrs. Stern went to a hospital for tests and tendered the previous medical insurance, but was told that the policy was cancelled. On January 10, 1983, Mrs. Stern petitioned the circuit court for a rule to show cause why Stern should not be held in contempt for failure to maintain health insurance as required by the February 4, 1982, order.

On January 10, Stern instructed Test to contact Mendoza to get to the bottom of the insurance problem and also to obtain a letter from Mendoza confirming the purchase of the group policy on December 7. When Test asked for such a letter, Mendoza informed him such a confirmation could not be given. Apparently, Mendoza had erred in his assertion to Stern that the policy would be "guaranteed." Rather, he had sold Stern an "underwritten" policy, which required investigation and approval of the medical histories of the applicants before issuance. Thus, the company could not guarantee that the policy would issue, or that all applicants would necessarily be covered.

On the morning of January 11, the date on which Stern was to appear on the rule to show cause, Stern instructed Test to prepare a chronology of events relating to the insurance problem. Test prepared a handwritten memorandum.

At this point the testimony begins to conflict slightly. The Hearing Board found that Stern was somewhat dissatisfied with the Test memo, so Stern dictated a letter which restated the substance of the memo. That letter bore no date. Stern also instructed Test to have Mendoza come to the office with some of Mendoza's office letterhead, and to have the letter typed on it. The resulting letter was backdated to December 15. The testimony conflicts as to whether Stern and/or Test were responsible for, or even aware of, the backdating. There is some evidence that the backdating was suggested by Stern.

In any event, Test and Mendoza took the letter to the Daley Center, where Stern was awaiting the start of the hearing on the rule to show cause. Outside the courtroom, the letter was shown to Stern and his attorney. Stern's attorney then showed the letter to Mrs. Stern's attorney.

In the proceeding in the courtroom, both Test and Mendoza were examined by Stern's lawyer, but the letter was not mentioned or offered into evidence. Mendoza testified truthfully on direct examination. During Mendoza's cross-examination, Mrs. Stern's attorney picked up the letter and questioned Mendoza about it. Mendoza initially testified falsely that the letter had been written by him on December 15. Neither Test nor Stern took any immediate action to interrupt or correct Mendoza's false testimony. Within three to five minutes, under vigorous cross-examination, Mendoza admitted that his earlier testimony was false and that the letter had been backdated. The letter was then admitted into evidence.

Based upon these facts, the Hearing Board concluded that the evidence did not support sanctions for failure to promptly reveal fraud upon a tribunal in violation of Rule 7—102(b)(2) of the Illinois Code of Professional Responsibility (107 Ill. 2d R. 7—102(b)(2)). They reached this conclusion because Mendoza promptly changed his false testimony before Stern had any real opportunity to correct it.

The Board also found that Stern did not participate in the creation of false evidence in violation of Rule 7—102(a)(6). This was so because Stern did not use the backdated letter in the contempt proceedings.

The Board concluded that Stern's conduct did constitute a violation of Disciplinary Rules 1—102(a)(4) and 7—102(a)(7) (107 Ill. 2d Rules 1—102(a)(4), 7—102(a)(7)), as well as Supreme Court Rule 771 (107 Ill. 2d R. 771). These rules forbid "conduct involving dishonesty, fraud,

deceit or misrepresentation," "knowingly mak[ing] a false statement of law or fact" and conduct "which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute." We accept the Board's findings of fact and agree with its legal conclusion.

As the Board noted, Stern and Test must be considered responsible for the preparation of a letter which was backdated almost four weeks. It may be logically inferred that the letter was intended for some use in connection with a judicial proceeding, because Stern directed that the letter be hastily prepared and brought to court. While the actual contents of the letter were true, an element of dishonesty and deceitfulness exists because of the false date the letter bore.

Stern argues that he should not be subject to discipline because no improper motive for backdating the letter was established by the evidence. However, motive and intent are rarely proved by direct evidence, but rather must be inferred from conduct and the surrounding circumstances. *In re Schwarz* (1972), 51 Ill. 2d 334.

The Board concluded, and we agree, that the letter could not have been intended to harm Stern or have only a neutral effect. It must be inferred that he presumably intended that the letter would aid his case by establishing the reasonableness of his belief that he had complied with the order requiring him to maintain insurance. It is true that the letter was not used to Stern's advantage. However, we do not believe that dishonesty and deceit need be successful to rise to the level of a violation. Moreover, Rule 771 prohibits conduct which *tends* to defeat the administration of justice. It is not necessary that the judicial process actually be thwarted for a violation to occur. We therefore find Stern culpable. In any event, the letter was shown to Mrs. Stern's attorney.

The remaining question involves imposing an appropriate sanction for Stern's misconduct. As noted, the Hearing Board recommended a 30-day suspension, and the Review Board increased the suspension period to 90 days. However, four members of the Review Board recommended that the complaint against Stern be dismissed. In light of all the circumstances, we conclude that a period of suspension would be an excessive measure.

We note that Stern's conduct, while tainted by an element of deceit, was not intended to be used to perpetrate a fraud on the court. (See *In re Lada* (1978), 69 Ill. 2d 581.) As already stated, Stern did not introduce the falsely dated letter into evidence or attempt to use it in any other way. He did not even direct that it be shown to his wife's attorney, although his attorney did so. While his motives for preparing the letter may have been questionable, he stopped short of using it to his advantage. Indeed, the ultimate effect of the letter's introduction harmed rather than benefitted Stern.

We note further that Stern has practiced law since 1970 and has never been subject to disciplinary action. Consequently, in light of all the foregoing considerations, we are of the opinion that censure is the appropriate sanction.

*Respondent censured.*

JUSTICE STAMOS took no part in the consideration or decision of this case.